IN RE the MARRIAGE OF:

Deborah DANIEL-NORDIN, Petitioner-Appellant,

v.

Robert E. NORDIN, Respondent-Respondent.

Supreme Court

*No. 91–0202. Oral argument November 3, 1992.—Decided February 17, 1993.*

(Also reported in 495 N.W.2d 318.)

635

For the petitioner-appellant there was a brief by *Arthur Thexton,* Madison, and oral argument by *Arthur Thexton.*

For the respondent-respondent there was a brief by *John D. Hanson* and *Van Metre, Hanson & Meyer,* Madison and oral argument by *John D. Hanson.*

SHIRLEY S. ABRAHAMSON, J. This is an appeal from an order of the circuit court for Dane

County, Susan Steingass, Circuit Judge, dismissing the motion of Deborah Daniel-Nordin to revise a judgment of divorce by increasing child support. Finding that both the Dane county circuit court and the Cook county (Illinois) circuit court asserted jurisdiction over the parties and the subject matter of child support, the Dane county circuit court concluded that it would defer to the jurisdiction of the Illinois court. This appeal is brought before the court on certification of the court of appeals. Section 809.61, Stats. 1989–90.

Because the circuit court based its discretionary decision to defer jurisdiction on facts that are not supported by the limited record that was before that court and did not fully consider relevant factors, we conclude that the Dane county circuit court erroneously exercised its discretion to defer jurisdiction.[1] We therefore remand the cause to the Dane county circuit court to reconsider the issue of exercising jurisdiction over Ms. Daniel-Nordin's motion to modify the child support provisions of the divorce judgment.

## I.

The material procedural facts are difficult to glean from the limited record that was before the Dane county circuit court and is now before us. The Dane county circuit court did not hold any evidentiary hearing in the current proceeding; it heard counsels' arguments and read counsels' submissions. The record does not contain a complete account of the previous child support pro-

---

[1] This court uses the phrase *erroneous exercise of discretion* in place of abuse of discretion. We have not changed the standard of review, just the locution. We have come to believe that the term abuse of discretion carries unjustified negative connotations. *City of Brookfield v. Milwaukee Metropolitan Sewerage District,* 171 Wis. 2d 400, 423–424, 491 N.W.2d 484 (1992).

ceedings in Illinois or in Wisconsin. Moreover, counsel representing the parties in the Wisconsin proceedings had not participated in the Illinois proceedings and had no personal knowledge of the Illinois proceedings.

The facts we are able to assemble are taken from the few documents relating to the Illinois court proceedings that are in the record, the briefs filed in the Dane county circuit court or this court, from counsels' transcribed arguments before the Dane county circuit court and counsels' arguments in this court, and the transcribed telephone conversation between the Illinois judge, Illinois counsel, and the Dane county circuit court judge and Dane county counsel.

In 1982, Deborah Daniel-Nordin commenced a divorce action in Eau Claire county, Wisconsin, the county in which she, Robert Nordin, and their two children were then residing. In February 1983 when the judgment of divorce was granted and at the commencement of this proceeding, Mr. Nordin was residing in Cook county, Illinois, and Ms. Daniel-Nordin and the couple's two children were residing in Dane county, Wisconsin.

The divorce judgment of the Eau Claire county circuit court ordered Mr. Nordin to pay child support but did not set the dollar amount of support to be paid. The court instead ordered that the sum of child support be determined and established by the Dane County Department of Human Services through an action under the Uniform Reciprocal Enforcement of Support Act (URESA). [2]

---

[2] The provision in the divorce judgment relating to child support states as follows:

> 15. Respondent [Mr. Nordin] shall pay, as and for support of the minor children of the parties, a sum to be determined and established by the Dane County Department of Human Services through a

A URESA proceeding was apparently commenced in Dane county after the divorce (although it is not in the record before us), and in December 1984, the Illinois court ordered Mr. Nordin to pay child support in the amount of $100.00 per month. [3] Apparently a second order was entered on December 28, 1984, requiring Mr. Nordin to pay $100.00 per month in child support and to pay $75.00 per month on an arrearage of $5,217.00. [4]

According to the documents before the Dane county circuit court and this court, the Illinois court set support in the amount of $100.00 per month in 1984 and did not modify the amount of support thereafter. For example, Ms. Daniel-Nordin's URESA petition filed in the Illinois court in September 1989, which we discuss in greater detail later, asserts that the Illinois court set the $100.00 per month figure in 1984 and that the amount had not been changed since then. Her reply brief asserts that the Illinois courts made no modification of the $100 per month award and that the purpose of all subsequent URESA proceedings was to order Mr. Nordin to make payments on arrearages. In addition, Mr. Nordin's Memorandum in Support of Motion for Rehearing of Motion to Dismiss (dated September 11, 1990) filed in the Dane county circuit court concedes that the amount of support was set in 1984.[5]

Uniform Reciprocal Enforcement of Support Action. Said payments shall continue until the last minor child of the parties shall reach the age of majority or shall graduate from high school, whichever occurs first.

[3] The order is not in the record. In a memorandum to the Wisconsin circuit court, Mr. Nordin refers to an order dated December 12, 1984.

[4] An undated Illinois court order containing this information is in the record.

[5] Furthermore in Mr. Nordin's March 22, 1990 motion in the Illinois court to enter the "agreed order," Mr. Nordin's counsel

Thus according to the record, the Illinois court ordered support in the amount of $100.00 per month in 1984 and did not modify the monthly sum thereafter. The 1984 Illinois court order setting monthly support at $100.00 was apparently in effect when Ms. Daniel-Nordin brought this proceeding in Dane county.

In September of 1989, Ms. Daniel-Nordin, by private counsel licensed in Illinois, moved the Illinois court to increase the 1984 URESA support order. That motion is in the record before us. Mr. Nordin moved to dismiss the proceeding on the ground that Ms. Daniel-Nordin could not appear by private counsel in a URESA action. On February 6, 1990, the Illinois court dismissed the action with prejudice for lack of jurisdiction and standing. Neither Mr. Nordin's motion for dismissal nor the Illinois court's order of dismissal is in the record before this court.

The parties agree that immediately after the hearing and dismissal of Ms. Daniel-Nordin's petition on February 6, 1990, they discussed settlement of their dispute and apparently signed documents entitled "agreed order" and "order for withholding." A copy of each document is in the record. According to both documents, the parties agreed that a court (whether Illinois or Wisconsin appears to be in dispute) could order Mr. Nordin to pay $384.00 per month for child support beginning March 1, 1990; that $384.00 per month would be withheld from Mr. Nordin's salary; that no arrearages were due; and that Mr. Nordin would not be responsible for health and

---

asserts the Mr. Nordin has complied with the "prior order of support of December 28, 1984, in the Circuit Court of Cook County . . .."

dental insurance for the children. This "agreed order" was never entered by any Illinois or Wisconsin court. [6]

Within a few days after the parties' execution of these February 6, 1990, documents, Ms. Daniel-Nordin advised Mr. Nordin that her signature to the "agreed order" was obtained under duress, that the document was not signed voluntarily, and that Mr. Nordin should not rely on the document.

On February 28, 1990, Ms. Daniel-Nordin filed a motion in Dane county circuit court for modification of the child support provision of the divorce judgment. Mr. Nordin moved to deny Ms. Daniel-Nordin's motion and dismiss the proceedings on grounds of forum non conveniens and the Dane county circuit court's alleged lack of personal jurisdiction over him. The Dane county circuit court denied this motion, holding that it had jurisdiction. Mr. Nordin then moved to dismiss the Wisconsin action on grounds that, under the circumstances of this case, the Illinois court was the more appropriate forum to decide child support.

Within a month after Ms. Daniel-Nordin had initiated her Dane county proceeding, Mr. Nordin initiated proceedings in Illinois: (1) He moved the Illinois court to enter the parties' "agreed order." [7] (2) He petitioned the Illinois court, in what seems to be an independent proceeding, to enroll the Wisconsin divorce judgment. Ms. Daniel-Nordin made a special and limited appearance (apparently in Mr. Nordin's enrollment proceeding) to

---

[6] Mr. Nordin's memorandum filed in the Dane county circuit court states that since April 1990 he has been paying $384.00 per month pursuant to the Feb. 6, 1990 "agreed order."

[7] It would appear that this motion should be part of the case involving Ms. Daniel-Nordin's URESA support petition that had been dismissed on Mr. Nordin's motion. Our record does not show any motion to reopen the dismissed action.

object to the Illinois court's jurisdiction in that matter. Although Mr. Nordin's attempt to enter the "agreed order" and his enrollment petition appear to have had different Illinois case numbers, the Illinois court's orders after these March filings bear the case number assigned to Mr. Nordin's petition to enroll the Wisconsin divorce judgment.

On May 22, 1990, the Illinois court held that Ms. Daniel-Nordin had subjected herself to the jurisdiction of the court by filing an action in Illinois and ordered that her special appearance be converted to a general appearance. As best we can read the indistinct copy of the Illinois court order in the record, the Illinois court's decision on its jurisdiction was based on Ms. Daniel-Nordin's filing her 1989 URESA petition which was dismissed. The Illinois court also set a hearing for July 10, 1990, on the question of whether it should enter the "agreed order." Ms. Daniel-Nordin did not appeal from the part of the May 22, 1990, Illinois order converting her special appearance to a general appearance.

Pursuant to its May 22, 1990, order, the Illinois court held a hearing on July 10, 1990. The proceedings are not part of the record. According to the order entered on July 10, 1990, which is in the record, the Illinois judge stated that she would confer by telephone with the Dane county circuit court judge to discuss whether to transfer the case to Wisconsin. The Illinois court ordered the Illinois proceedings on the motion for entry of the "agreed order" to be continued.[8]

---

[8] The record is silent about further proceedings in Illinois relating to the "agreed order" or Mr. Nordin's obligation to pay increased support.

The parties have advised the court that on June 4, 1991, the Illinois court ordered an increase in child support. The Illinois

On October 8, 1990, the Dane county circuit court judge and the Illinois judge, along with Illinois and Wisconsin counsel, participated in a telephone conference call to discuss which court—Illinois or Wisconsin—should hear the matter. The two judges did not explore in depth the various bases upon which each asserted jurisdiction. In response to a question from the Dane county circuit court judge about the basis of Illinois' jurisdiction, the Illinois judge responded that she did not think Illinois could base jurisdiction on Ms. Daniel-Nordin's URESA petition which was dismissed.[9] The Illinois judge apparently based her conclusion that the Illinois court had jurisdiction on her belief that Ms. Daniel-Nordin's URESA actions had been before the Illinois courts for seven years and that Ms. Daniel-Nordin had thus "tacitly acknowledged" that Illinois was the appropriate state in which to proceed.

When the Dane county circuit court judge asked the Illinois judge whether "in the bottom line are you inclined to continue with your exercise of jurisdiction," the Illinois judge responded "yes," relying on the history of court proceedings in Illinois, which the Illinois judge may have mistakenly characterized as numerous Illinois court modifications of the support order. According to

court did not enter or have the parties abide by the February 6, 1990 "agreed order."

[9] The Illinois judge said in this telephone conversation: "I am not sure that [the petition by private counsel] necessarily waives her jurisdiction argument. I think, you know, she came in and voluntarily submitted herself through a private attorney. It was dismissed, that doesn't in my mind result in substantive waiver." This statement seems to contradict the May 22, 1990, Illinois court's order that held that Ms. Daniel-Nordin had entered a general appearance by having private counsel petition the Illinois court for modification of the support order.

the transcribed telephone conference between the Illinois judge and the Dane county circuit court judge, the Illinois judge said that the Illinois court modified the support order in "1983, '84, '87, '88, '90 . . . up and down based on his employment and his full status and whatever."

At the conclusion of the telephone conversation on October 8, 1990, the Dane county circuit court deferred to the Illinois court in light of the Illinois judge's "fairly strong thoughts on the matter and how this should [be] resolve[d] with the long history of things in Illinois." The Dane county circuit court judge continued: "I am satisfied that I should, given the seven year history, defer to her exercise of jurisdiction in the case and I do so . . .. So just in terms of support, given that Mrs. Nordin has signed contracts in Illinois, has sought modifications in Illinois, and has participated in the URESA process in Illinois on a number of occasions, and in the face of [the Illinois judge's] strong thoughts that's where jurisdiction should be, I am under URESA going to defer to her in her exercise of jurisdiction." On October 24, 1990, an order was entered dismissing Ms. Daniel-Nordin's Dane county circuit court proceeding.

This case presents two questions of law: First, whether, as a matter of law, the Dane county circuit court has the authority to defer jurisdiction to an Illinois court, and second, if the Dane county circuit court has such authority, whether it properly exercised its discretionary authority.

## II.

The first issue to be resolved is whether the Dane county circuit court has the authority to defer the exercise of jurisdiction to an Illinois court. Resolution of this issue requires this court to make two related determina-

tions: (1) whether the Illinois court has jurisdiction, upon Mr. Nordin's initiating his proceeding in Illinois, to set or to modify child support for the Nordin children, and (2) whether the Dane county circuit court has jurisdiction to modify the child support provision in the Nordin divorce judgment.

We do not have all the facts upon which to make a decision about the Illinois court's jurisdiction in Mr. Nordin's Illinois proceeding, and the briefs do not fully develop the jurisdictional arguments. Nonetheless, for the reasons set forth, we assume in this appeal that the Illinois court has personal jurisdiction over Ms. Daniel-Nordin and subject matter jurisdiction in the proceeding.

Upon Ms. Daniel-Nordin's special appearance, the Illinois court ordered that it had jurisdiction, and Ms. Daniel-Nordin did not appeal from that order asserting jurisdiction. We assume that the time to appeal the Illinois court's order has passed. Furthermore both parties have advised the court that on June 4, 1991, after the Dane county circuit court deferred jurisdiction to Illinois and dismissed Ms. Daniel-Nordin's proceeding for modification, an Illinois court issued a support order after a full evidentiary hearing in which Ms. Daniel-Nordin participated. Neither the 1991 Illinois court hearing nor support order, both of which occurred while this appeal was pending, is in the record on this appeal. The parties agree that Ms. Daniel-Nordin did not appeal this June 4, 1991, Illinois court order within the time for appeal.

Ms. Daniel-Nordin appears to be collaterally attacking the order of the Illinois court asserting its jurisdiction. A court of one state may inquire about another state court's jurisdictional basis. As we have stated previously, we do not have all the facts relating to the Illinois proceedings. Counsel have not briefed the issues of

res judicata and full faith and credit as applied to the Illinois court's order asserting its jurisdiction or the significance of Ms. Daniel-Nordin's participation in the Illinois court proceedings on the merits. We are unwilling to override the Illinois court's order asserting jurisdiction on a collateral attack given the limited record before us and without benefit of briefs on this issue by counsel. Accordingly for purposes of this appeal, we assume that the Illinois court had jurisdiction to determine support. If Ms. Daniel-Nordin continues to dispute the Illinois court's jurisdiction, we assume that counsel for both parties will present argument and authority for their positions to the Dane county circuit court on remand.

We turn now to the jurisdiction of the Dane county circuit court. The parties agree, as they must, that the Dane county circuit court has personal jurisdiction over Mr. Nordin and subject matter jurisdiction in Ms. Daniel-Nordin's proceeding to modify the support provisions of the divorce judgment. Once a Wisconsin court with personal jurisdiction enters a divorce judgment, neither party can escape jurisdiction in future proceedings which attempt to modify or alter the judgment. *In re Marriage of McCleavy v. McCleavy,* 150 Wis. 2d 26, 34, 440 N.W.2d 566 (1989) (modification of maintenance).

The parties further agree, as they must, that the Dane county circuit court did not lose jurisdiction when Ms. Daniel-Nordin used URESA to enforce a support order in Illinois. Both Illinois and Wisconsin have adopted, albeit with modifications, the Revised Uniform Enforcement of Support Act (to which we refer as URESA). See 9B Uniform Laws Annotated 393 (Master ed. 1987). The remedies provided under URESA are in addition to and do not substitute for any other remedies.

Section 767.65(3), Stats. 1989–90; *Horch v. Ponik,* 132 Wis. 2d 373, 379, 392 N.W.2d 123 (Ct. App. 1986). No URESA provision prohibits the state that initially ordered child support from exercising continuing jurisdiction over child support matters. URESA not only permits, but actually contemplates, that courts in two states may exercise jurisdiction in child support disputes. See secs. 767.65(30), (31), Stats. 1989–90.[10] We thus conclude that the Dane county circuit court had jurisdiction over Ms. Daniel-Nordin's proceeding to modify the child support provisions of the Wisconsin divorce judgment.

Ms. Daniel-Nordin argues that sec. 767.25(1)(a), Stats. 1989–90, mandates that the Dane county circuit court retain jurisdiction to decide the amount of child support and that sec. 767.25(1)(a) precludes the Wisconsin court from deferring jurisdiction to the Illinois court in this case. Section 767.25(1)(a), as amended after the divorce judgment in this case was entered, provides:

> Whenever the court approves a stipulation for child support under s. 767.10, enters a judgment of annulment, divorce or legal separation, or enters an order or a judgment in an action under s. 767.02(1)(f) or (j) or 767.08, the court shall do all of the following:
> (a) Order either or both parents to pay an amount reasonable or necessary to fulfill a duty to support a child. The support amount may be

---

[10] For a discussion of and cases interpreting URESA's antisupersession provision, see Andrea G. Nadel, Annotation, *Construction and Effect of Provision of Uniform Reciprocal Enforcement of Support Act That No Support Order Shall Supersede or Nullify any Other Order,* 31 ALR4th 347 (1984).

expressed as a percentage of parental income or as a fixed sum. (Emphasis added.)[11]

Section 767.25(1)(a), Stats. 1989-90, does not address the problem of multi-state jurisdiction over proceedings to modify a provision for child support after a divorce judgment has been entered. We do not believe the legislature intended this statute to be read as requiring a Wisconsin circuit court to retain jurisdiction in a proceeding to modify the support provision of a divorce judgment and as precluding a Wisconsin circuit court from deferring jurisdiction to another state. Accordingly we conclude that sec. 767.25(1)(a), Stats. 1989-90, does not preclude the Dane county circuit court from deferring jurisdiction of this child support proceeding to the Illinois court.

Therefore the question arises about the basis for the circuit court's power to defer jurisdiction. Section 767.025(1), Stats. 1989-90, provides that when a proceeding is initiated to modify a support award under sec. 767.02(1)(i), if a question arises "as to which county should exercise jurisdiction, a conference involving both judges, all counsel and guardians ad litem . . . may be convened [by telephone] . . . to resolve the question."

Pursuant to sec. 767.025(1), the Dane county and Eau Claire county circuit courts conferred by telephone to discuss which of the courts should retain jurisdiction of Ms. Daniel-Nordin's motion which had been brought under sec. 767.02(1)(i).

Section 767.025(1) does not state whether it applies between counties in Wisconsin or also applies between a

---

[11] At the time of the parties' divorce in 1983, sec. 767.25 provided that a court *may* order either or both parents to pay an amount reasonable or necessary for support of a child. See sec. 767.25(1), Wis. Stats. 1983-84.

Wisconsin county and a county in another state, although sec. 767.02(1)(i) refers to "an action to enforce or modify a judgment or order affecting the family granted in this state or elsewhere." (Emphasis added.) Section 767.025(1) does not set forth any factors for a Wisconsin court to consider in determining the proper forum, nor does it suggest how to resolve conflicts between courts.

We need not rely on sec. 767.025(1) in this case because our court has recognized that a Wisconsin circuit court may defer jurisdiction in an action affecting the family to the court of another state as a matter of comity. *Sheridan v. Sheridan,* 65 Wis. 2d 504, 509, 510, 223 N.W.2d 557 (1973) (child custody case); *Brazy v. Brazy,* 5 Wis. 2d 352, 92 N.W.2d 856 (1958) (child custody case). When the courts of two states have jurisdiction to decide a matter, the orderly administration of justice requires that these courts attempt to avoid conflicting exercises of jurisdiction. A circuit court's decision whether to defer jurisdiction in a child support action rests on the sound discretion of the court.

We next review the Dane county circuit court's decision to defer jurisdiction in this case to determine whether the circuit court erroneously exercised its discretionary power.

### III.

Neither the Wisconsin statutes nor our cases specify the factors a circuit court should consider in determining whether to defer jurisdiction over child support to another state court having jurisdiction. It is clear that in deciding whether to exercise or defer jurisdiction over child support a Wisconsin circuit court should determine which state's court is better able to determine the merits of the child support dispute. Thus factors to be consid-

651

ered on the merits of the child support dispute become significant to the circuit court's decision to exercise or defer jurisdiction. An examination of these factors will enable the circuit court to gauge the nature and extent of the factual inquiry needed to decide the merits of the dispute. The state court having the better access to the relevant factual information would appear to be the court that should retain jurisdiction.

Sections 767.25(1j), (1m) and sec. 767.32(1), Stats. 1989–90, guide Wisconsin courts in setting the amount of child support. Unless one of the parties requests otherwise, the Wisconsin circuit court sets the amount of support by applying the percentage standard established by the department of health and social services. Section 767.25(1j), Stats. 1989–90. The standards established by the department, codified at sec. HSS 80.03, Wis. Admin. Code, set forth a mathematical formula based upon the number of children to whom a duty of support is owed.

According to the parties, the Illinois courts also use a percentage-of-income standard as a starting point for child support determinations. Wisconsin's standard in this case, we are advised, is 25% of gross income, Wis. Admin. Code sec. HSS 80.03 (1) (1987), while Illinois' is 25% of net income, ch. 40, para 505 (a), Ill. Rev. Stats. (1992). But both states' courts may consider factors other than the gross or net income of the parents or the established percentage-of-income standards.

In Wisconsin, upon a party's request, a circuit court may modify the amount of child support determined under the mathematical formula if the circuit court, considering the factors enumerated in the statute, finds by the greater weight of the credible evidence that use of the percentage formula is unfair to the child or to any of the parties. The statute sets forth financial considerations relating to the economic circumstances of the parents

and child, and the educational and physical, mental and emotional health needs of the child. Section 767.25(1m), Stats. 1989–90.

After a judgment providing for child support is entered, a Wisconsin circuit court may modify the support provisions, taking into account the total economic circumstances and the needs of the child. Section 767.32(1), Stats. 1989–90.

Mr. Nordin asserts that the Illinois court is better qualified to set child support because it has handled a number of the parties' URESA proceedings and because all his financial records are in Illinois. He contends that the Illinois court can easily determine the level of support from the records and can order that the amount awarded be withheld from his salary.

Ms. Daniel-Nordin contends that the Dane county circuit court is in a better position to determine the amount of child support. She asserts that because the children reside in Wisconsin, Wisconsin has a significant interest in assuring that the child support awarded is adequate for the children's welfare. She also argues that because the children are in Wisconsin, the Dane county circuit court is in the best position to assess their needs. She claims that the Illinois court has no expertise in this case because the only Illinois proceeding setting the amount of monthly child support took place in 1984.

The Dane county circuit court rested its discretionary decision on the following factors: the Illinois judge's desire to exercise jurisdiction, the seven year history of Illinois proceedings, the fact that support actions differ from visitation and custody actions in which the children and witnesses assessing the children should be local and available, and the fact that Ms. Daniel-Nordin "signed contracts in Illinois, has sought modifications in

Illinois, and has participated in the URESA process in Illinois on a number of occasions." [12]

The Dane county circuit court's exercise of discretion to defer jurisdiction will be sustained if the record demonstrates that the court examined the relevant facts, applied the proper standard of law and engaged in a rational process of decision-making. A circuit court erroneously exercises its discretion when it makes a mistake with respect to the facts upon which its decision is based. *Perrenoud v. Perrenoud,* 82 Wis. 2d 36, 46, 260 N.W.2d 658 (1978).

We conclude that the Dane county circuit court based its decision to defer jurisdiction on facts not supported by the limited record before that court and did not fully consider the relevant factors.

The Dane county circuit court viewed the history of the Illinois proceedings as important to its decision. We agree that the history of the Illinois proceedings is an important consideration. If the Illinois judge (or court) had a lengthy history of handling support for these children, the Illinois court would have developed a body of knowledge about these parties and their economic and other circumstances. But the "seven year history of Illinois proceedings" upon which the Dane county circuit court relied is not in the record. According to the record, as we explained previously, after 1984 the Illinois URESA proceedings were apparently orders to pay arrearages, not proceedings to determine or redetermine the amount of child support. [13] Thus it appears that the Dane county circuit court erroneously relied on the Illi-

---

[12] The Dane county circuit court's language is quoted in full at p. 646 of this opinion.

[13] As we explained previously, according to the record before the Dane county circuit court, the child support order apparently remained at $100.00 per month since 1984 and was not modified

nois judge's assertion that the Illinois court modified the parties' support order "in 1983, 1984, 1987, 1988 and 1990 . . . up and down based on his employment and his full status and whatever," and "for seven years this woman has had all kinds of modifications."

The Dane county circuit court also rested its decision on the fact that Ms. Daniel-Nordin had "signed contracts in Illinois, [and] has sought modifications in Illinois." Only one document that could be considered a signed contract appears in the record, namely the "agreed order" discussed previously. Ms. Daniel-Nordin claims this "agreed order" was coerced, and neither the Illinois court nor the Wisconsin court has ever acted on the "agreed order," which the parties contemplated would be an order of a court. The only record of Ms. Daniel-Nordin's seeking modification of support in Illinois is the 1989 petition which the Illinois court dismissed with prejudice. The Dane county circuit court was thus relying on Ms. Daniel-Nordin's action in Illinois seeking modification of support that had been dismissed with prejudice at Mr. Nordin's request.

The Dane county circuit court viewed Ms. Daniel-Nordin's participation "in the URESA process in Illinois on a number of occasions" as an important consideration in deferring jurisdiction to Illinois, but the circuit court did not explain the importance of this fact. If the URESA actions were merely enforcement actions and actions for amounts in arrears, as they appear to be, the Illinois court may not have acquired any expertise on the issues of the children's needs and Mr. Nordin's ability to pay.

Although recognizing the state's interest in protecting the children, the Dane county circuit court did not

---

by the Illinois court any time prior to the commencement of the current Wisconsin action except for amounts in arrears.

fully evaluate the information a circuit court would need in setting support and which jurisdiction was best able to acquire that information. While the Dane county circuit judge stated in the October 8, 1990, telephone conference with the Illinois judge and counsel for the parties that "[o]ne thing that did occur to me in favor of Wisconsin jurisdiction, of course, the child is here," the Dane county circuit court judge later stated that "I don't think, as someone pointed out, we are talking about custody or visitation, or those things that make it mandatory that the children and the assessors be—be local and available." Other than this brief comment about the presence of the children in Wisconsin, the Dane county circuit court did not consider whether the outcome of the child support proceeding would depend on proof of any special needs of the children. The only reference to the information a circuit court would need to act on a request for modification of child support was the Illinois judge's statement that the materials would "entail Mr. Nordin providing some information about his finances, tax returns, employment record, etc., all of which from what I understand is in Illinois."

Given the state of this record, the Dane county circuit court's reliance on a seven-year history of modifications in Illinois which is not supported by the record, and the Dane county circuit court's incomplete analysis of the factors relevant to a decision whether to defer jurisdiction to modify support, we conclude that the Dane county circuit court erroneously exercised its discretion in deferring to the Illinois court.

For the reasons set forth, we reverse the order and remand the cause to the Dane county circuit court to determine whether it should exercise jurisdiction.

*By the Court.*—Order reversed and cause remanded.