STATE of Wisconsin, Plaintiff-Respondent,

v.

Jose NIEVES-GONZALEZ,, Defendant-Appellant.

Court of Appeals

No. 00–2138–CR. Submitted on briefs February 12,
2001.—Decided March 15, 2001.

2001 WI App 90

(Also reported in 625 N.W.2d 913.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jose R. Nieves-Gonzalez,* pro se.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *James M. Freimuth,* assistant attorney general.

Before Dykman, P.J., Roggensack and Deininger, JJ.

¶ 1. DYKMAN, P.J. Jose Nieves-Gonzalez appeals pro se from an order denying his postconviction

motion for court-appointed postconviction counsel. Nieves-Gonzalez argues that he was denied his right to counsel and to an adequate first appeal, in violation of the Fourteenth Amendment. We agree and conclude that the trial court erroneously exercised its discretion because it applied the federal poverty guidelines incorrectly when denying Nieves-Gonzalez court-appointed counsel without a hearing. We therefore reverse and remand for the trial court to hold a hearing at which it may take additional evidence and make a determination consistent with our decision.

## I. Background

¶ 2. After a guilty plea and sentence on drug charges, Nieves-Gonzalez filed a notice of intent to pursue postconviction relief. He requested postconviction counsel from the state public defender, and also moved the trial court to appoint counsel for him. The public defender determined that it could not make an indigency determination until Nieves-Gonzalez submitted information regarding his wife's income. The trial court concluded that before Nieves-Gonzalez was eligible to receive counsel at county expense, he was obligated to provide his wife's income information to the public defender. It appears that Nieves-Gonzalez or his wife then provided the public defender with the necessary information, after which the public defender determined that Nieves-Gonzalez did not meet its indigency requirements.

¶ 3. Nieves-Gonzalez renewed his motion to the trial court for appointed postconviction counsel. Nieves-Gonzalez asserted that he and his wife were separated and that he would not be able to get money from her. Without holding a hearing, the trial court

made the following findings of fact with regard to Nieves-Gonzalez's indigency status:

1. The defendant is currently incarcerated and is unemployed.

2. The defendant receives $21 per month at the institution in which he is incarcerated.

3. The defendant owes $1,500 in court-ordered obligations.

4. The defendant and [M.E.N.] are husband and wife and there is no showing that they are either divorced or legally separated.

5. The defendant and his wife earned $24,864 in 1998.

6. The defendant and his wife have seven dependents.

7. The statutory cost of counsel is $2,000.

8. The defendant's total family income is $12,432 (for an eight-month period).

9. The statutory cost of living for a family of nine is $7,360 (for an eight-month period).

10. The defendant's total income minus family expenses ($5,072) is significantly greater than the amount set forth in the 1998 federal guidelines ($2,537 per month).

The court then concluded that Nieves-Gonzalez was "nonindigent for purposes of the appointment of counsel at county expense" and denied his motion. Nieves-Gonzalez appeals.

## II. Analysis

¶ 4. Nieves-Gonzalez argues that he was denied his rights to counsel and an adequate first criminal

appeal in violation of the Fourteenth Amendment when the trial court failed to appoint postconviction counsel for him. *See Douglas v. California*, 372 U.S. 353, 356–58 (1963). In support of the trial court's decision, the State asserts that because Nieves-Gonzalez's motion did not adequately explain his efforts to retain private counsel, it was inadequately pleaded. We briefly address the State's argument first.

¶ 5. The trial court may require a defendant seeking appointed counsel to make at least some showing of his or her attempts to retain counsel. *See State v. Dean*, 163 Wis. 2d 503, 514, 471 N.W.2d 310 (Ct. App. 1991). Nieves-Gonzalez stated in a notarized cover letter accompanying his renewed motion that he had written to some attorneys but had received no replies. The State argues that this is inadequate evidence of Nieves-Gonzalez's efforts to retain counsel, but we conclude that it was at least enough to warrant a hearing given the facts before us. It is apparent from the record that Nieves-Gonzalez is not fluent in English, and that this may have affected his ability to provide more thorough documentation in support of his requests for counsel.[1] Moreover, because Nieves-Gonzalez has not yet received a hearing on his motion, the assertions in his motion should be construed liberally. *See State ex rel. Harris v. Smith*, 220 Wis. 2d 158, 164, 582 N.W.2d

---

[1] The record contains a transcript of Nieves-Gonzalez's sentencing hearing, at which he had an interpreter. At the hearing, his interpreter stated that Nieves-Gonzalez wanted to give a statement to the court in English, but that he could not because he was too nervous. Instead, the interpreter translated his statement for him. The record also contains a copy of Nieves-Gonzalez's preliminary hearing waiver, which indicates that it was read to him in Spanish.

131 (Ct. App. 1998) (holding that courts are to construe pro se pleadings liberally).

¶ 6.　We have summarized the duties underlying a trial court's decision regarding appointed counsel as follows:

> The trial court cannot restrict itself to the criteria mandated by the legislature [for the state public defender]. The court should consider all relevant evidence presented by the defendant that is material to the defendant's present ability to retain counsel. The trial court also must disregard the public defender's established cost of retained counsel in Wis. Adm. Code sec. *SPD 3.02(1)* and consider the fees charged by local private counsel in similar cases. The review at this stage will ultimately involve examining on a case-by-case basis, factors and circumstances that the legislature is ill-equipped to consider.

*Dean*, 163 Wis. 2d at 514. Thus, the right to appointed counsel does not hinge on the indigency criteria of the public defender. *Pirk v. Dane County*, 175 Wis. 2d 503, 506, 499 N.W.2d 280 (Ct. App. 1993). The trial court's determination of indigency is separate from the public defender's, and the public defender's criteria are not controlling. *See Dean*, 163 Wis. 2d at 514. If a criminal defendant does not meet the public defender criteria, the trial court must nevertheless determine whether the defendant is indigent, and if he or she is, the trial court should appoint counsel from the private bar. *Pirk*, 175 Wis. 2d at 506.

¶ 7.　*Pirk* and *Dean* direct trial courts to depart from the public defender's criteria when considering indigency for purposes of court-appointed counsel, but

*Pirk* and *Dean* do not explain what income standards trial courts should use. The WISCONSIN JUDICIAL BENCHBOOK CR 3–6 (2000) recommends that a defendant may be considered indigent if the defendant's income is within federal poverty guidelines, and we agree that the trial court should consider the federal guidelines.

■

¶ 8.  In adopting the federal poverty guidelines as a proper consideration for court-appointed counsel, we do not hold that every defendant with income less than the federal guidelines is entitled to court-appointed counsel. For example, it is conceivable that some defendants with very low income may nevertheless own significant assets. In addition, other unforeseen factors may affect the trial court's decision in a particular case, and it is not our role to attempt to enumerate all of them here. However, where a trial court denies a motion for court-appointed counsel after the defendant has shown that she or he has no assets and a household income well below the federal guidelines, a trial court should set forth findings explaining why it has determined the defendant can nevertheless afford counsel. Otherwise, appellate courts will have difficulty determining whether the trial court's denial of a request for counsel was a proper exercise of discretion.

¶ 9.  Turning to the facts at hand, we first note that the trial court was careful to set forth findings detailing its calculations with regard to indigency. The trial court explained that it was following *Pirk* and *Dean* by considering the "local prevailing average rate" of counsel and that its decision was "not based solely on the public defender's criteria for appointment of counsel." The court considered the federal guidelines; however, it appears that it made an error in applying the guidelines.

¶ 10. When a trial court makes an indigency determination for purposes of appointment of counsel, whether a defendant has the financial means to obtain counsel is a question of fact. *See Dean*, 163 Wis. 2d at 513. We will not set aside a trial court's factual determinations unless they are clearly erroneous. *State v. Erickson*, 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999). Whether the facts as found require the appointment of counsel is a matter within the trial court's discretion. *Dean*, 163 Wis. 2d at 514. A circuit court erroneously exercises its discretion when it makes a mistake with respect to the facts upon which its decision is based. *Daniel-Nordin v. Nordin*, 173 Wis. 2d 635, 654, 495 N.W.2d 318 (1993).

¶ 11. The trial court found that Nieves-Gonzalez's "total family income" for an eight-month period was $12,432, the amount shown on the public defender's worksheet. The court also found that the "statutory cost of living" for an eight-month period for a family of nine was $7,360, again the amount used by the public defender. Subtracting $7,360 from $12,432, the court determined that Nieves-Gonzalez's available income for the eight-month period was $5,072. The court compared that to a figure of $2,537, which it attributed to the 1998 federal poverty guidelines, and noted that $5,072 was "significantly greater." However, the 1998 federal poverty guidelines cap yearly income at $30,450 for a household of nine. This corresponds to an eight-month household income of $20,300, and a monthly household income of $2,537. Thus, it appears that the court compared Nieves-Gonzalez's *eight-month income available under the public defender's criteria* ($5,072) to the federal guideline's *one-month* household income cap ($2,537). Instead, the

court should have compared the federal guidelines' eight-month household income cap of $20,300 to Nieves-Gonzalez's eight-month household income of $12,432. Using the latter comparison, it is clear that Nieves-Gonzalez's household income for an eight-month period is almost $8,000 *below* the federal guidelines.[2]

¶ 12.  To the extent that the trial court's findings with regard to indigence utilize this incorrect comparison, they are clearly erroneous. To the extent the trial court relied on these findings in denying Nieves-Gonzalez court-appointed counsel and in failing to conduct a hearing on the matter, it erroneously exercised its discretion. *See Daniel-Nordin*, 173 Wis. 2d at 654.

¶ 13.  The trial court also found that Nieves-Gonzalez made no showing that he was legally separated or divorced. The trial court's calculations therefore assumed that Nieves-Gonzalez's wife's income was attributable to him. On the present record, we cannot say that the trial court's finding with regard to Nieves-Gonzalez's marital status was clearly erroneous. However, Nieves-Gonzalez may have further evidence to offer on this point at a hearing.[3]

---

[2] The State concedes that the trial court may have incorrectly applied the federal poverty guidelines. The State also notes that, to the extent the trial court on remand finds that the federal poverty guidelines are important in its decision to appoint counsel, an evidentiary hearing may be warranted. We appreciate the State's analysis, and we commend it for its candor.

[3] Because we conclude that the trial court improperly denied Nieves-Gonzalez court-appointed counsel, even assuming his wife's income was attributable to him, we need not decide under what circumstances, if any, a trial court should disregard spousal income in its indigency determination.

¶ 14. We remand so that the trial court may (1) hold a hearing at which it can inquire further into Nieves-Gonzalez's financial and marital status if necessary and (2) reapply the federal poverty guidelines properly. We note that, even including spousal income, Nieves-Gonzalez's household income is still well below the federal guidelines.[4] Unless, upon further inquiry by the trial court, evidence comes to light showing that Nieves-Gonzalez has additional resources available, it would be difficult to conclude that he is not entitled to court-appointed counsel.

*By the Court.*—Order reversed and cause remanded with directions.

---

[4] The trial court analyzed Nieves-Gonzalez's financial information under the 1998 federal poverty guidelines. For the sake of clarity, we have also used the 1998 guidelines in our review of the trial court's calculations. However, on remand, the trial court should determine whether a newer version of the guidelines is now more appropriate.