24 P.3d 477 (2001)
106 Wash.App. 586
STATE of Washington, Respondent,
v.
Matthew G. SILVA, Appellant.
No. 44813-7-I.
Court of Appeals of Washington, Division 1.
June 4, 2001.
*479 Cheryl D. Aza, Washington Appellate Project, Sabrina Katie Housand, Seattle, for Appellant.
David Frederick Thiele, Snohomish County Prosecuting Attorneys Office, Everett, for Respondent.

*478 PUBLISHED IN PART
COX, J.
Matthew Silva appeals his conviction of attempting to elude a pursuing police vehicle, forgery, and hit and run. Silva was involved in an "accident" within the meaning of the felony hit and run statute when a police officer was injured while jumping free of Silva's moving vehicle. Defense counsel's decision to concede guilt during closing argument to charges of forgery and attempting to elude a police vehicle did not constitute an unauthorized guilty plea that effectively waived Silva's right to a fair trial and his right to hold the State to its burden of proof. There being no other issues raised in this appeal that warrant relief, we affirm.
Silva went to an Albertson's grocery store one morning, and wrote a check for $50 over the amount of his purchase. Because the check was for a significant amount over the purchase price, and because Silva failed to produce a driver's license, the cashier decided to telephone the bank issuing the check to verify that sufficient funds existed in the account. When she began the call, Silva took the check from her hand and told her that he would write another check. He then wrote a second check for the purchase amount. Both checks were on the account of a landscaping business. Because the cashier remained suspicious, she had a co-worker write down Silva's license plate number as he left the store. Once the cashier spoke with the bank, she was unable to verify if the account had sufficient funds. She then reported the incident to the police.
Shortly after Silva left the store, Bothell police officer Janine Henkel stopped Silva because the car he was driving had expired license tabs. Officer Henkel asked for Silva's driver's license, registration, and proof of insurance. Silva explained that he did not have any of those, and verbally gave her a false name and date of birth. Officer Henkel ran two computer checks using the information Silva provided, but found "no record" of such a person. Moments later, Officers Jeff Hanna and Leslie Brooks arrived at the scene.
As Officers Henkel and Hanna were examining a day planner Silva produced from the car, Officer Brooks approached them and said, "He's a suspect in a ..." or "He's wanted for...."[1] Silva, who was in the car, started the engine. Officer Hanna ran to the driver's side door and reached through the open window to turn the ignition off. As he reached for the ignition, the car "[t]ook off at a high rate of speed" with Officer Hanna's arms still inside the driver's window.[2] Officer Hanna testified that he grabbed the steering wheel and pulled his legs up to avoid falling underneath the car. He ordered Silva to stop the car, but Silva refused. Silva continued to accelerate, and the car began heading across the road toward a parked vehicle. Afraid of being crushed between the two vehicles, Officer Hanna pushed himself off of the car and slid to a stop in the gravel. He sustained an abrasion that required medical *480 attention. Silva sped away without stopping.
Officer Henkel gave chase in her patrol car, with the emergency lights and sirens activated. While in pursuit, she saw Silva drive through a four-way stop, watched him weave in and out of traffic, and observed other cars "going off the road" to avoid his vehicle.[3] Officer Henkel continued the chase, which took place at high speeds in a residential neighborhood, until a sergeant instructed her to stop.
The State charged Silva with second degree assault, felony hit and run, attempting to elude a pursuing police vehicle, and forgery. The jury acquitted Silva of the assault charge, but convicted him of the remaining crimes. The trial court imposed concurrent standard range sentences.
Silva appeals.

Accident
Silva argues that, because intentional acts by both parties caused Officer Hanna's injuries, the State failed to prove that an "accident" occurred within the meaning of Washington's hit and run statute. This argument is unpersuasive.
RCW 46.52.020, commonly known as the hit-and-run statute, provides in pertinent part, that the "driver of any vehicle involved in an accident resulting in the injury to or death of any person shall immediately stop such vehicle at the scene of such accident... and in every event remain at, the scene of such accident until he ... has" provided certain identifying information to the injured party.[4] To prove Silva guilty of felony hit and run under this statute, the State bore the burden of proving each of the following elements beyond a reasonable doubt: (1) a motor vehicle was driven in Washington; (2) the vehicle was involved in an accident; (3) injury or death resulted from the accident; and (4) the driver failed to immediately stop.[5]
Silva concedes that he drove a vehicle in the state of Washington, that Officer Hanna was injured, and that he did not stop to provide the information required by statute. Thus, the issue is whether the State presented sufficient evidence that his vehicle was involved in an "accident" within the meaning of the statute. Silva contends that "[t]here was nothing accidental about the incident," because it occurred as a result of intentional acts by both parties. Specifically, he asserts it was Officer "Hanna's deliberate acts of reaching in through Silva's window, continuing to hold on to the steering wheel, and ultimately releasing himself from Silva's car, combined with Silva's intentional refusal to stop the vehicle", that caused Officer Hanna's injuries.[6] Silva argues that an accident is an event that occurs only if brought about by carelessness, ignorance, or unawareness. Because the incident here resulted from intentional acts by both parties, he asserts that there was no "accident" and that the State thus failed to prove an essential element of the offense charged.
Although Silva frames his challenge as one to the sufficiency of the evidence, the real question before this Court is one of statutory interpretation and the meaning of the word "accident" as it appears in the hit-and-run statute. When reading a statute, we will not construe language that is clear and unambiguous, but will instead give effect to the plain language without regard to rules of statutory construction.[7] In the absence of a specific statutory definition, this Court will give words their ordinary meaning, which it may determine by referring to a dictionary definition.[8]
*481 Silva relies on the following dictionary definition to support his argument that an accident is limited to an event occurring by chance and without intent:
1a: an event or condition occurring by chance or arising from unknown or remote causes ...
[1]c: an unforeseen unplanned event or condition ...
2a: a [usually] sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result....[9]
But other references define the word more broadly. For example, The Oxford English Dictionary defines an accident as "[a]nything that happens ... an occurrence, incident event ... an unfortunate event, a disaster, a mishap."[10]Black's Law Dictionary similarly defines the word as "a happening; an incident; an occurrence or event.... any unpleasant or unfortunate occurrence that causes injury, loss, suffering or death; some untoward occurrence aside from the usual course of events."[11] Such definitions do not exclude events in which intentional conduct plays a part.
In determining the meaning of a word as it appears in a statute, this Court should not employ "[a] mechanistic use of statutory construction rules [that] would lead [it] astray from [its] paramount duty, which is `to ascertain and give expression to the intent of the Legislature.'"[12] When faced with determining "the meaning of words used but not defined within a statute," this Court should "give careful consideration to the subject matter involved, the context in which the words are used, and the purpose of the statute."[13] If statutory language is susceptible to two constructions, one of which will promote the purpose of the statute and the second of which will defeat it, this Court will adopt the former construction.[14] Moreover, this Court must construe statutes to avoid strained or absurd results.[15]
The Legislature designed the statute "to punish hit-and-run drivers involved in accidents resulting in either property damage or injury to some person," and to provide "immediate assistance to those injured."[16] To construe the term as Silva suggests and conclude that an incident arising from intentional conduct is not an "accident", would frustrate the Legislature's intent to prevent drivers from escaping liability for their acts and to provide immediate help for those injured. Moreover, such a construction would lead to the absurd result that a person could intentionally injure another person with a car and drive away "without fear of violating the statute."[17]
*482 Several other states, under similar circumstances, have rejected the precise argument advanced by Silva and concluded that the word "accident" within the meaning of similar hit-and-run statutes includes incidents resulting from intentional conduct.[18] In Rodgers, for example, the victim was injured after intentionally jumping from the defendant's moving vehicle.[19] The defendant argued that he was not involved in an "accident" within the meaning of Arizona's hit-and-run statute because of the victim's intentional conduct.[20] The Arizona Court of Appeals rejected this argument, instead concluding that the term "accident" includes "any vehicular incident resulting in injury or death, whether or not such harm was intended."[21]
Similarly, in Wylie v. State,[22] the victim died after jumping from the defendant's moving vehicle.[23] The defendant argued that the victim's death was not an "accident", and that he thus had no duty under the state's hit-and-run statute to stop, render aid, or notify the authorities.[24] The court disagreed, concluding that an "`accident' is any incident in which someone suffers injury or death."[25] The court reasoned that "requiring drivers of vehicles from which passengers jump and are killed or injured, to stop, render aid, and summon help, best serves the legislative purpose in enacting these statutes."[26]
The Supreme Court of Oregon has similarly concluded that, where intentional conduct on the part of the driver leads to a collision, an "accident" has occurred within the meaning of that state's hit-and-run statute.[27] That court reasoned that "[t]o interpret `accident' so as to include only unintentional conduct would exclude some of the situations for which the law was enacted. As the Court of Appeals stated, `[I]t makes no sense to read the statute as imposing duties on persons who negligently injure others or damage their property but as absolving persons who do so intentionally from any such duties.'"[28]
The clear weight of authority supports the State's position that the word "accident" encompasses situations involving intentional conduct. Silva points to no cases that hold otherwise. We adopt the reasoning relied upon by those courts that have addressed this issue, and hold that the word "accident", within the meaning of our hit-and-run statute, includes incidents arising from intentional conduct on the part of the driver and/or the victim.
To the extent that we need consider further the sufficiency argument, we reject it. "The State bears the burden of proving each and every element of the crime charged beyond a reasonable doubt."[29] Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, any rational jury could find the essential elements of the crime beyond a reasonable doubt.[30] For purposes of a challenge to the sufficiency of the evidence, the appellant admits the truth of the State's evidence and all inferences that a trier of fact *483 can reasonably draw from it.[31] It is clear under the foregoing analysis that the State presented sufficient evidence that Silva was involved in an accident.

Constitutional Rights
Silva argues that his attorney's decision to concede guilt during closing argument to charges of forgery and attempting to elude a police vehicle constituted an unauthorized guilty plea that effectively waived his right to a fair trial and his right to hold the State to its burden of proof. This argument is also wholly unpersuasive.
By entering a "not guilty" plea, a defendant preserves both his right to a fair trial as well as his right to hold the State to its burden of proof.[32] Silva argues that his attorney entered an unauthorized guilty plea, thereby waiving both of those rights. It is true, as Silva asserts, that an attorney "is without authority to waive any substantial right of his client unless specifically authorized to do so."[33] It is also true that "a defendant cannot be made to plead guilty against his wishes, however wise such a plea would be."[34] The decision to plead guilty "is reserved solely for the accused based on his intelligent and voluntary choice."[35]
But it is not an unauthorized guilty plea "if in closing argument counsel acknowledges what the course of the trial has made undeniablethat on a particular count the evidence of guilt is overwhelming."[36] Rather, "[s]uch acknowledgment can be a sound tactic when the evidence is indeed overwhelming (and there is no reason to suppose that any juror doubts this) and when the count in question is a lesser count, so that there is an advantage to be gained by winning the confidence of the jury."[37] An attorney need not consult with the client before making such a tactical move.[38]
In Underwood, a jury convicted the defendant of criminal confinement with a deadly weapon and of attempted rape.[39] During closing argument, defense counsel conceded to the jury that his client was guilty of criminal confinement with a deadly weapon.[40] On appeal, the defendant argued "that it is ineffective assistance of counsel per se for a lawyer to concede his client's guilt without the client's consent."[41] The Court disagreed, concluding that "[t]he lawyer did not plead Underwood guilty; he merely acknowledged the weight of the evidence" on the lesser of two charges, in order to contrast it with the lack of direct evidence on the more serious charge of attempted rape.[42]
*484 Here, as in Underwood, defense counsel's decision to admit her client's guilt on charges of forgery and evading a police vehicle did not constitute an unauthorized guilty plea, but was instead a reasonable trial tactic. The State presented overwhelming evidence of Silva's guilt on these charges. The evidence clearly demonstrated that Silva committed a forgery, in violation of RCW 9A.60.020(1), when he wrote the check to Albertsons.[43] Silva presented no evidence to the contrary. The State also presented overwhelming and uncontradicted evidence that Silva drove a motor vehicle with an officer in pursuit in violation of RCW 46.61.024.[44] No jury could have acquitted Silva on those two charges. In the face of such overwhelming evidence, it was a reasonable tactical decision on defense counsel's part to concede guilt on those charges in an attempt to gain credibility with the jury and secure an acquittal on the more serious charges. She only conceded what the State had obviously established, and her strategy in doing so was apparently effective because the jury acquitted Silva on the most serious charge of assault in the second degree.
Silva relies on Wiley v. Sowders,[45] and United States v. Swanson,[46] to support his argument that his attorney's concession was the equivalent of a guilty plea. But both of those cases are distinguishable. In Wiley, the defendant's attorney conceded his client's guilt on all charges, without any apparent strategic purpose.[47] The Sixth Circuit Court of Appeals held that, under those circumstances, such a concession was the equivalent of a guilty plea.[48] The Court held that Wiley "was deprived of effective assistance of counsel when his own lawyer admitted his client's guilt, without first obtaining his client's consent to this strategy."[49] Similarly, in Swanson, defense counsel effectively conceded his client's guilt to the only crime charged.[50] The attorney "told the jury that no reasonable doubt existed as to his client's identity as the perpetrator" of the bank robbery the Government charged him with committing.[51] The Ninth Circuit Court of Appeals held that defense counsel's concession constituted ineffective assistance of counsel, which "lessened the Government's burden of persuading the jury that Swanson was the perpetrator of the bank robbery."[52]
Here, in contrast, Silva's attorney did not concede her client's guilt to all charges against him. She instead conceded only that the State's evidence overwhelming established that he was guilty of the two least serious offensesforgery and attempting to elude a police vehicle. That concession was a legitimate tactical decision, one designed to gain credibility with the jury and to secure her client's acquittal on the two more serious charges. Based on the foregoing, we hold that defense counsel's remarks did not constitute an unauthorized guilty plea.
We affirm the judgment and sentence.
The remainder of this opinion has no precedential value and will be filed for public *485 record in accordance with the rules governing unpublished opinions.[53]
AGID, C.J. and APPELWICK, J., concur.
NOTES
[1] Report of Proceedings of March 16, 1998 at 64, 107.
[2] Report of Proceedings of March 16, 1998 at 65, 108.
[3] Report of Proceedings of March 16, 1998 at 68-72.
[4] RCW 46.52.020(1) (italics ours). RCW 46.52.020(3) requires the driver to "give his or her name, address, insurance company, insurance policy number, and vehicle license number" and to "exhibit his or her vehicle driver's license...."
[5] State v. Komoto, 40 Wash.App. 200, 206, 697 P.2d 1025, review denied 104 Wash.2d 1009 (1985), cert. denied, 474 U.S. 1021, 106 S.Ct. 572, 88 L.Ed.2d 556 (1985).
[6] Brief of Appellant at 13.
[7] Allan v. Department of Labor & Indus., 66 Wash.App. 415, 418, 832 P.2d 489 (1992).
[8] State v. Standifer, 110 Wash.2d 90, 92, 750 P.2d 258 (1988). See also Addleman v. Board of Prison Terms & Paroles, 107 Wash.2d 503, 509, 730 P.2d 1327 (1986) (in an unambiguous statute, the court will give words their plain and obvious meaning); Brenner v. Leake, 46 Wash.App. 852, 854-55, 732 P.2d 1031 (1987).
[9] Webster's Third New International Dictionary 11 (3d. ed.1993).
[10] The Oxford English Dictionary (1971) (quoted in State v. Rodgers, 184 Ariz. 378, 909 P.2d 445, 447 (Ct.App.Ariz.1995)).
[11] Black's Law Dictionary, 6 Ed. West Publishing Co. 1990.
[12] City of Tacoma v. Taxpayers, 108 Wash.2d 679, 693, 743 P.2d 793 (1987) (quoting Service Employees International Union, Local 6 v. Superintendent of Pub. Instruction, 104 Wash.2d 344, 348, 705 P.2d 776 (1985)).
[13] City of Tacoma, 108 Wash.2d at 693, 743 P.2d 793 (citing State v. Stockton, 97 Wash.2d 528, 533, 647 P.2d 21 (1982)).
[14] City of Seattle v. Fontanilla, 128 Wash.2d 492, 498, 909 P.2d 1294 (1996).
[15] State v. Akin, 77 Wash.App. 575, 580, 892 P.2d 774 (1995).
[16] Vela, 100 Wash.2d at 640, 673 P.2d 185 (refusing to construe hit-and-run statute as requiring "knowledge of injury," because such a construction "would practically destroy the purpose of the statute"); City of Seattle v. Stokes, 42 Wash.App. 498, 502, 712 P.2d 853 (1986) (observing that the Legislature enacted the hit-and-run statute to protect accident victims).
[17] Gutierrez v. State, 510 S.E.2d 570, 573-74, 235 Ga.App. 878 (1998) (concluding that the word "accident" within the meaning of Georgia's hit-and-run statute "does not require that the act causing the injury be mere negligence or mishap").
[18] Gutierrez, 510 S.E.2d at 573; State v. Sabetta, 672 A.2d 451 (R.I.1996); State v. Rodgers, 184 Ariz. 378, 909 P.2d 445 (1995); McGee v. State, 815 P.2d 196 (Okla.Crim.App.1991); Wylie v. State, 797 P.2d 651 (Alaska App.1990); People v. Jimenez, 11 Cal.App.4th 1611, 15 Cal.Rptr.2d 268 (1992); State v. Carpenter, 334 N.W.2d 137 (Iowa 1983).
[19] Rodgers, 909 P.2d at 446.
[20] Rodgers, 909 P.2d at 447.
[21] Rodgers, 909 P.2d at 447.
[22] 797 P.2d 651 (Alaska App.1990).
[23] Wylie, 797 P.2d at 656.
[24] Wylie, 797 P.2d at 655.
[25] Wylie, 797 P.2d at 658.
[26] Wylie, 797 P.2d at 658.
[27] State v. Parker, 299 Or. 534, 704 P.2d 1144, 1148-49 (1985).
[28] Parker, 704 P.2d at 1149 (quoting State v. Parker, 70 Or.App. 397, 689 P.2d 1035, 1038 (1984)). See also McGee, 815 P.2d at 198 (similarly concluding that an intentional act may be an accident within the meaning of Oklahoma's hit-and-run statute).
[29] State v. Billups, 62 Wash.App. 122, 126, 813 P.2d 149 (1991).
[30] State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992).
[31] State v. Jones, 63 Wash.App. 703, 707-08, 821 P.2d 543, review denied, 118 Wash.2d 1028, 828 P.2d 563 (1992); Salinas, 119 Wash.2d at 201, 829 P.2d 1068.
[32] Wiley v. Sowders, 647 F.2d 642, 650 (6th Cir. 1981), cert. denied, 454 U.S. 1091, 102 S.Ct. 656, 70 L.Ed.2d 630 (1981).
[33] State v. Ford, 125 Wash.2d 919, 922, 891 P.2d 712 (1995).
[34] Underwood v. Clark, 939 F.2d 473, 474 (7th Cir.1991) (citing Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312-13, 77 L.Ed.2d 987 (1983)).
[35] Wiley, 647 F.2d at 648-49 (citing Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)).
[36] Underwood, 939 F.2d at 474.
[37] Underwood, 939 F.2d at 474. See also U.S. v. Tabares, 951 F.2d 405, 409 (1st Cir.1991) (defense counsel's admission to the jury that his client was guilty of gun possession charges "was a tactical decision, designed to lead the jury towards leniency on the other charges...."); U.S. v. Gomes, 177 F.3d 76 (1st Cir.1999), cert. denied, 528 U.S. 911, 941, 120 S.Ct. 260, 352, 145 L.Ed.2d 218, 275 (1999) (counsel's concession of guilt on one of several counts was "a reasonable strategy," to preserve "some credibility with the jury for use where it might help."); McClain v. D.R. Hill, 52 F.Supp.2d 1133, 1143 (1999) (admission of guilt on burglary charges was not ineffective assistance, but rather "a tactical decision to challenge only the most serious charges against petitioner, thereby supporting petitioner's credibility.").
[38] Underwood, 939 F.2d at 474 (citing U.S. v. Joshi, 896 F.2d 1303, 1307-08 (11th Cir.1990)).
[39] Underwood, 939 F.2d at 474.
[40] Underwood, 939 F.2d at 474.
[41] Underwood, 939 F.2d at 474.
[42] Underwood, 939 F.2d at 474.
[43] RCW 9A.60.020(1) states that "[a] person is guilty of forgery if, with intent to injure or defraud:

(a) He falsely makes, completes, or alters a written instrument or;
(b) He possesses, utters, offers, disposes of, or puts off as true a written instrument which he knows to be forged."
[44] RCW 46.61.024, provides in part that:

[a]ny driver of a motor vehicle who willfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a manner indicating a wanton or willful disregard for the lives or property of others while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and his vehicle shall be appropriately marked showing it to be an official police vehicle.
[45] 647 F.2d 642, 644 (6th Cir.1981).
[46] 943 F.2d 1070 (9th Cir.1991).
[47] Wiley, 647 F.2d at 644-46.
[48] Wiley, 647 F.2d at 644-46.
[49] Wiley, 647 F.2d at 650.
[50] U.S. v. Swanson, 943 F.2d 1070, 1076 (9th Cir.1991).
[51] Swanson, 943 F.2d at 1076.
[52] Swanson, 943 F.2d at 1074.
[53] RCW 2.06.040.