STATE of Wisconsin, Plaintiff-Respondent,†

v.

Gary L. GORDON, Defendant-Appellant.

Court of Appeals

*No. 01–1679–CR. Submitted on briefs December 4, 2001.— Decided January 15, 2002.*

2002 WI App 53

(Also reported in 641 N.W.2d 183.)

† Petition to review granted 4-22-02.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven P. Weiss*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James M. Freimuth*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Fine, Schudson and Curley, JJ.

¶ 1. CURLEY, J.   Gary L. Gordon appeals from a judgment entered after a jury convicted him of knowingly violating a domestic abuse injunction, contrary to WIS. STAT. § 813.12(8)(a) (1999–2000),[1] disorderly conduct while armed, contrary to WIS. STAT. §§ 947.01 and 939.63, and second-degree recklessly endangering safety, contrary to WIS. STAT. § 941.30(2). Gordon also appeals from the trial court's order denying his post-conviction motion. Gordon claims that:   (1) the trial court erroneously re-instructed the jury on the charge of second-degree recklessly endangering safety, in response to the jury's request; (2) his trial counsel was ineffective for conceding his guilt to the charge of disorderly conduct while armed; (3) the trial court erroneously instructed the jury regarding WIS. STAT. § 939.63 by failing to include the *Peete*[2] nexus requirement; (4) the trial court erroneously admitted evidence under WIS. STAT. § 908.03(8), and, further, erroneously directed a partial verdict on behalf of the

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

[2] *State v. Peete*, 185 Wis. 2d 4, 517 N.W.2d 149 (1994).

State based on that evidence; and (5) the trial court erroneously exercised its discretion in assessing him costs associated with one of the State's witnesses.

¶ 2.   Because we conclude that the trial court properly re-instructed the jury on the charge of second-degree recklessly endangering safety, we affirm Gordon's conviction as to that charge. However, we reverse the "while armed" portion of the judgment finding him guilty of disorderly conduct, as well as the judgment for knowingly violating a domestic abuse injunction, and remand those charges with directions to the circuit court. Finally, we conclude that the trial court erroneously assessed costs against Gordon, and vacate that portion of the judgment of conviction.

## I. BACKGROUND.

¶ 3.   On October 29, 1998, Margaret Wilder obtained a domestic abuse injunction against Gordon, her boyfriend of twelve years. Despite the injunction, Wilder and Gordon lived together for approximately three to four months preceding October 1, 1999. Wilder used a wheelchair and relied on Gordon for assistance. However, on October 1, 1999, Wilder called the police to enforce the domestic abuse injunction. Wilder later testified that she called the police because Gordon was verbally abusive, agitated, and she was concerned that he was on drugs.

¶ 4.   The police arrived at Wilder's apartment and Wilder's grandson let in Officer Matthew Bongard, a City of Milwaukee police officer. Officer Bongard observed Wilder in her wheelchair in the living room of the apartment. Wilder then warned the officer that Gordon was "right there and he has some knives." Officer Bongard turned and saw Gordon standing in the hallway holding two knives – a butcher knife and a

712

steak knife. Officer Bongard immediately drew and pointed his gun at Gordon and ordered him to drop the knives. Gordon refused and fled into a back bedroom. Officer Bongard then radioed for support and another police officer on the scene, Officer John Amberg, secured the area outside the apartment.

¶ 5. A neighbor informed Officer Amberg that Gordon had jumped through a window of the apartment and was hiding in some bushes. The officers then began to search the neighborhood. Officer Bongard spotted Gordon behind some hedges a few houses away from the apartment building. Gordon made eye contact with the officer, who again pointed his gun at Gordon and ordered him to drop the knives. Gordon ignored the officer and fled into a neighbor's backyard. Officer Bongard followed Gordon into the backyard where the two were approximately fourteen feet from each other. Gordon was still holding the knives and Officer Bongard was still yelling for Gordon to drop them. Gordon then took a step towards Officer Bongard. The officer testified that he feared Gordon was going to attack him with the knives, so he fired two shots at Gordon in quick succession. Gordon, shot once in the left arm and once in the abdomen, received immediate medical attention.

¶ 6. Gordon was charged with knowingly violating a domestic abuse injunction, disorderly conduct while armed, and second-degree recklessly endangering safety. On August 2, 2000, a jury convicted Gordon of the three crimes. Gordon was later sentenced to nine months in prison for violating the domestic abuse injunction, six months for disorderly conduct while armed, and two years for second-degree recklessly endangering safety, all to be served consecutive to one another.

## II. ANALYSIS.

*A. The trial court properly re-instructed the jury, in response to its request.*

¶ 7.   Gordon first contends that we should reverse his conviction for second-degree recklessly endangering safety because the trial court erroneously responded to questions from the jury during deliberations. We disagree and affirm his conviction on this charge.

¶ 8.   "A trial court has wide discretion in developing the specific language of jury instructions." *State v. Foster,* 191 Wis. 2d 14, 26, 528 N.W.2d 22 (Ct. App. 1995). Our review is limited to whether the trial court acted within its discretion and we will reverse only if the instructions, taken as a whole, communicated an incorrect statement of the law or otherwise probably misled the jury. *See State v. Randall,* 222 Wis. 2d 53, 59–60, 586 N.W.2d 318 (Ct. App. 1998). However, the issue of whether a jury instruction fully and fairly explained the relevant law is a question of law, which this court reviews *de novo. See County of Kenosha v. C & S Mgmt., Inc.,* 223 Wis. 2d 373, 395, 588 N.W.2d 236 (1999).

¶ 9.   Here, we deal with re-instructing a jury. This court has held that "[j]ust as the initial jury instructions are within the trial court's discretion, so, too, is the necessity for, the extent of, and the form of re-instruction." *State v. Simplot,* 180 Wis. 2d 383, 404, 509 N.W.2d 338 (Ct. App. 1993) (citation omitted); *see also Curl v. State,* 40 Wis. 2d 474, 478–79, 162 N.W.2d 77 (1968) ("Re[-]instruction of a jury is a matter of sound discretion of the trial court.") (footnote omitted), *over-*

*ruled on other grounds by Schimmel v. State*, 84 Wis. 2d 287, 298–302, 267 N.W.2d 271 (1978). Therefore, we must determine whether the trial court responded to the inquiries from the jury with sufficient specificity to clarify the jury's problem, *see Simplot*, 180 Wis. 2d at 404–05, without communicating an incorrect statement of the law or otherwise misleading the jury, *see Randall*, 222 Wis. 2d at 59–60.

¶ 10.　During its deliberations, the jury sent three notes to the court regarding the charge of second-degree recklessly endangering safety. After approximately one and one-half hours of deliberations, the jury sent out a note asking:　"What is the State contending is the third charge on the defendant?" With consent of both sides, the court answered in writing that the third charge was: "Second[-]Degree Recklessly Endangering Safety, as outlined in the instructions." Gordon does not challenge the trial court's answer to this question.

¶ 11.　After the jury resumed deliberations the next morning, it submitted another note to the court:

> We have a sole juror who is holding out on the final charge. Several jurors have suggested that if we knew what 1st Degree Recklessly Endangering Safety entailed, it would clarify this juror's opinion.
>
> Is it possible to learn what the State considers Reckless[ly] Endangering in the first degree?

Over Gordon's objection, the trial court explained:

> Here is the difference between first and second[-]degree recklessly endangering safety. . . . The first two elements of a first[-]degree case are the same as the two elements of a second[-]degree case. In a first[-]degree case the State is required to prove a third element[:] that the circumstances of the defendant's conduct showed an utter disregard for human life.

715

The trial court also gave the following cautionary instruction:

> First of all, let me remind you that with regard to second[-]degree recklessly endangering safety[,] the elements that the State must prove to you are the elements which are laid out in the written instructions that I gave you and that I read to you at the end of trial. That should be the main focus of your discussion and that's what the State must prove beyond a reasonable doubt, those two elements that I outlined for you.
>
> I think that you raise an interesting question. [I]t is a naturally curious subject as to why we would call that second[-]degree recklessly endangering. . . . I think that by telling you the difference you will understand better the issues that you must decide regarding second[-]degree and that must remain the sole focus of your discussions.
>
> . . .While this will help solve your natural curiosity, I want to make sure that you don't go off into a discussion about whether the State could have proven first[-]degree recklessly endangering safety] or whether the defendant engaged in any conduct that suggested first[-]degree. . . .
>
> You are really only called upon and you're really only allowed to decide the issue as set forth in your previous instruction[.]
>
> . . . .
>
> Mr. Gordon has not been accused of [first-degree recklessly endangering safety]. He's not been accused of acting with utter disregard for human life and in fact the only two issues that you must decide are the two issues that I presented to you earlier[.]

¶ 12.    After further deliberations, the jurors sent a final note focusing on the second element of the crime of second-degree recklessly endangering safety, *i.e.,* the creation of risk:[3]

> In Part II of the third charge[:]
>
> A.    Did the defendant intend to attack the officer or was the defendant putting the knives down?
>
> -or-
>
> B.    Did the defendant create a risk by holding the knives?
>
> -or-
>
> C.    Did the defendant know that he was creating a risk?

The trial court responded to this final question by explaining:

> What I'm going to first do in responding to your question is tell[] you how I interpret your question, and then I'm going to try to provide you with an answer. What I understand you to be asking is:    What do you have to decide in order to resolve the second element of the third charge which is endangering safety? And I'm seeing most of the heads nodding yes.
>
>     . . . .

---

[3] WISCONSIN JI—CRIMINAL 1347 states, in relevant part:

> The second element requires that the defendant endangered the safety of another by criminally reckless conduct. This requires that the defendant's conduct created an unreasonable and substantial risk of death or great bodily harm to another person and that the defendant was aware that his conduct created such a risk.

(Footnotes omitted.)

The very simple answer to the question . . . is you have to decide B and C. You don't have to decide A, but you should take it into consideration.

The trial court further clarified:

In the written instructions that you are given[,] you are told that in the second element the State must prove beyond a reasonable doubt that the defendant's conduct created *an unreasonable and substantial risk* of great bodily harm, and that the defendant was aware that his conduct created such a risk. So, the issue you must decide is has . . . the defendant's conduct created *an unreasonable and substantial risk* of great bodily harm, and that he was aware that his conduct created that risk.

Now, in your question you refer to intending to attack the officer, putting the knives down and holding the knives. Now, you are *not* required specifically to decide any of those three things. If you believe those three things happened, those things may be helpful to you in deciding whether *a risk* was created and whether he was aware of *the risk*. . . . Those facts and circumstances will help you decide those two questions. Did he create *a risk?* And did he know that he was creating *a risk?*

. . .But the only question you must answer is whether he created *a risk,* and whether he was aware that his conduct created *a risk.*

(Emphasis added.)

■

¶ 13. With respect to the trial court's response to the second question, Gordon does not challenge the wording of the instruction. Rather, he alleges that the trial court "committed prejudicial error in instructing the jury on the uncharged . . . offense of First[-]Degree

718

Reckless[ly] Endangering" because the instruction "encouraged the jury to speculate and compromise." We disagree.

¶ 14.  The trial court did not recite the jury instruction on first-degree recklessly endangering safety. Rather, it simply responded to the jury's specific and logical inquiry by explaining that the crime of first-degree recklessly endangering safety involves an additional element – the defendant must act with utter disregard for human life. Additionally, the trial court made it abundantly clear that Gordon was not charged with first-degree recklessly endangering safety, that the jurors were not to speculate or deliberate regarding the crime in the first-degree, and that the jury's sole task was to focus on the two elements of the second-degree charge.

¶ 15.  We presume that the jury followed the trial court's cautionary instruction, *see State v. Grande*, 169 Wis. 2d 422, 436, 485 N.W.2d 282 (Ct. App. 1992) ("The jury is presumed to follow all instructions given."), and conclude that the trial court responded reasonably to the jury's question by providing an accurate statement of the requested legal standard, which afforded a relevant benchmark to assist the jury's understanding of the legal concepts involved. *See also State v. Dodson*, 219 Wis. 2d 65, 86, 580 N.W.2d 181 (1998). ("The court's discretion should be exercised . . . to assist the jury in making a reasonable analysis of the evidence.") (citations omitted). Thus, the trial court did not erroneously exercise its discretion in answering the jury's second question.[4]

---

[4] However, this court cautions that instructing on an uncharged offense is appropriate only under very rare circum-

719

¶ 16. With respect to the trial court's response to the third jury question, Gordon challenges the legal soundness of the instruction itself. Gordon argues that "this re-instruction was fatally flawed because the court stated several times that the jury need only find that Gordon created 'a risk' rather than 'an unreasonable and substantial risk of death or great bodily harm.'"

¶ 17. However, Gordon failed to object to the re-instruction at trial. Gordon now claims that we may review the issue based on the supreme court's holding in *Dodson*, 219 Wis. 2d at 88.[5] However, unlike *Dodson*, where the alleged inconsistency was not readily apparent, *see id.*, here, the language of the re-instruction was clear and the alleged inconsistency was readily apparent. Therefore, we decline to review the matter pursuant to the *Dodson* rationale.

¶ 18. Gordon also argues that we may review the issue in the interest of justice pursuant to WIS. STAT. § 752.35.[6] However, § 752.35 creates only a lim-

stances. *See, e.g., State v. Kramar*, 149 Wis. 2d 767, 792, 440 N.W.2d 317 (1989) ("A circuit court has the duty to accurately give to the jury the law of whatever degree of felonious homicide the evidence tends to prove and no other.").

[5] In *Dodson*, the supreme court reviewed a modified jury instruction, even though the defendant failed to object at trial. *State v. Dodson*, 219 Wis. 2d 65, 88, 580 N.W.2d 181 (1998). The court stated: "We understand how in the heat of trial no one, the State, the defendant, nor the court, could see the internal inconsistency in the instruction given." *Id.*

[6] WISCONSIN STAT. § 752.35 provides:

**752.35 Discretionary reversal.** In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any

ited power of reversal requiring proof that: (1) the real controversy has not been fully tried, and (2) a miscarriage of justice has occurred. *See State v. Ward*, 228 Wis. 2d 301, 306, 596 N.W.2d 887 (Ct. App. 1999). Because Gordon fails to develop an argument establishing these elements, we decline to exercise our power of discretionary reversal under § 752.35. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (stating that we may decline to review an issue inadequately briefed).

¶ 19.  Thus, our review is limited to whether the alleged instructional error warrants a new trial due to ineffective assistance of counsel based on defense counsel's failure to object. The familiar two-pronged test for ineffective assistance of counsel claims requires a defendant to prove: (1) deficient performance, and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bentley*, 201 Wis. 2d 303, 311–12, 548 N.W.2d 50 (1996). To prove deficient performance, a defendant must show specific acts or omissions of counsel that were "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. To prove prejudice, a defendant must show that counsel's errors were so serious that the defendant was deprived of a fair trial and a reliable outcome. *See id.* at 687. In other words, "[t]he defendant must show that there is a reasonable probability that, but for counsel's

reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

721

unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

¶ 20. Ineffective assistance of counsel claims present mixed questions of fact and law. *State v. Pitsch*, 124 Wis. 2d 628, 633–34, 369 N.W.2d 711 (1985). A trial court's factual findings must be upheld unless they are clearly erroneous. *State v. Harvey*, 139 Wis. 2d 353, 376, 407 N.W.2d 235 (1987). Whether counsel's performance was deficient and, if so, whether the deficient performance prejudiced the defendant are questions of law, which we review *de novo. Pitsch*, 124 Wis. 2d at 634. The defendant has the burden of persuasion on both prongs of the test. *See Strickland*, 466 U.S. at 687.

¶ 21. Here, Gordon fails to demonstrate that he was deprived of a fair trial and a reliable outcome. First, the trial court's original instructions correctly outlined the two elements of the crime, including the requirement that "the defendant's conduct created an unreasonable and substantial risk of death or great bodily harm to another person." Second, the jury was also given the full instruction on second-degree recklessly endangering safety in writing for reference during its deliberations. Third, in the trial court's opening instructions at the outset of trial, the court outlined the elements of second-degree recklessly endangering safety, including "that the defendant's conduct created an unreasonable and substantial risk of death or great bodily harm to another person." Fourth, and finally, in responding to the jury's question, the court initially fully repeated the exact language as stated in the jury instruction. Although the court later referred to only "a risk," we are not persuaded that the jurors were misled and believed that they could ignore the prior instructions.

¶ 22.    In light of the previous instructions, and given the totality of the re-instruction, we conclude that the trial court's response to the jury's third question did not prejudice the defendant.[7] *See Foster*, 191 Wis. 2d at 28 ("[W]e consider the challenged portion of the instructions in context with all the other instructions provided by the trial court."). Accordingly, we affirm Gordon's conviction for second-degree recklessly endangering safety.

*B. A Machner hearing is required.*

¶ 23.    Gordon also seeks a new trial on the charge of disorderly conduct while armed. In closing argument, defense counsel stated:

> But I want to be very clear there is no doubt, there is no question that at the moment when Officer Bongard shot Mr. Gordon, Mr. Gordon was subject to arrest for disorderly conduct while armed. Obviously running around the neighborhood with two knives is disorderly conduct and it is disorderly conduct while armed.
>
> . . . .
>
> I'm asking you folks to acquit Mr. Gordon on the first [violation of a domestic abuse injunction] and the third [recklessly endangering safety] charges. Thank you.

Gordon asserts that these remarks amount to a guilty plea as to the disorderly conduct while armed charge,

---

[7] Because we conclude that Gordon was not prejudiced by trial counsel's failure to object to the re-instruction, we need not decide whether counsel's performance was deficient. *See Strickland v. Washington*, 466 U.S. 668, 697 (1984) ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one.").

and concludes that such a waiver of his rights without his consent constitutes ineffective assistance of counsel.

¶ 24. The analysis of this issue raises two questions: (1) Was defense counsel's statement to the jury the equivalent of a guilty plea?; and (2) Did defense counsel have the power to offer such a "plea," which was inconsistent with Gordon's express plea of not guilty, without Gordon's consent?

¶ 25. The trial court found that defense counsel's remarks during closing argument amounted to a concession of Gordon's guilt:

> The State contends that no concession was made, but instead that trial counsel was cleverly distracting the jury from the charge at hand. I cannot make that finding, though. [Defense counsel] clearly suggested to the jury that the defendant was not contesting a conviction on Count 2 [disorderly conduct while armed] when he explicitly asked the jury to acquit Mr. Gordon on Counts 1 and 3 only.

We conclude that this finding is not clearly erroneous. *See Harvey*, 139 Wis. 2d at 376 (stating that a trial court's factual findings must be upheld unless they are clearly erroneous). Thus, we agree with Gordon that defense counsel's statement to the jury was the functional equivalent of a guilty plea. We also agree with Gordon that defense counsel lacked the power to offer such a "plea" without his consent. *See Brookhart v. Janis*, 384 U.S. 1, 7 (1966) (holding that the constitutional rights of a defendant cannot be waived by counsel where the defendant has neither explicitly nor implicitly pled guilty).

¶ 26. Generally, once counsel is appointed, the day-to-day conduct of the defense rests with the attor-

ney. *Wainwright v. Sykes*, 433 U.S. 72, 93 (1977) (Burger, C.J., concurring). This includes the responsibility of deciding if and when to object, which witnesses, if any, to call, and what defenses to develop. *Id.* Such decisions, as a practical matter, must be made without consulting the client. *Id.*

¶ 27. However, "[i]t is . . . recognized that the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Thus, we conclude that a defense attorney may not admit his client's guilt, which is contrary to his client's plea of not guilty, unless the defendant unequivocally understands and consents to the admission. *See Wiley v. Sowders*, 647 F.2d 642, 649 (6th Cir. 1981). Logically, we also hold that an attorney may not stipulate to facts which amount to the "functional equivalent" of a guilty plea without the defendant's consent. *See id.*; *see also People v. Carter*, 354 N.E.2d 482, 485 (Ill. App. Ct. 1976) (stating that counsel's closing argument that was tantamount to an admission of guilt cannot be overlooked as mere errors in judgment or trial strategy).

¶ 28. As pointed out by the State, a number of jurisdictions have reached the opposite conclusion, *i.e.,* that the concession of a defendant's guilt may be an acceptable "trial tactic," even absent the defendant's consent. *See United States v. Gomes*, 177 F.3d 76, 83–84 (1st Cir. 1999); *Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir. 1991); *State v. Silva*, 24 P.3d 477, 483–84 (Wash. Ct. App. 2001). While admitting that a defendant cannot be made to plead guilty against his or her wishes, however wise such a plea would be, these courts

have concluded that a defense lawyer is not required to consult with a client on "tactical moves," including conceding a client's guilt without the client's consent when, on a particular count, the evidence of guilt is overwhelming. *See Underwood*, 939 F.2d at 474; *see also Silva*, 24 P.3d at 483 (concluding that it is not an unauthorized guilty plea if, in closing argument, defense counsel acknowledges what the course of the trial has made undeniable – that on a particular count the evidence of guilt is overwhelming). While the State correctly highlights this countervailing authority, we disagree that this line of cases validates Gordon's defense counsel's statement to the jury.

¶ 29.  First, these cases rely on a thin distinction between a "guilty plea" and an "admission of guilt." *See Gomes*, 177 F.3d at 83–84 (holding that although defense counsel "flatly admitted [ ] guilt to a single [count] . . . [c]ounsel's concession was not a guilty plea"); *Underwood*, 939 F.2d at 474 (holding that a lawyer who "conceded before the jury his client's guilt of criminal confinement with a deadly weapon . . . did not plead [his client] guilty; he merely acknowledged the weight of the evidence"); *Silva*, 24 P.3d at 484 (holding that "defense counsel's decision to admit her client's guilt . . . did not constitute an unauthorized guilty plea"). This group of cases constructs a fine line somewhere between "merely acknowledging the weight of the evidence" and simply declaring "my client has decided to plead guilty" – the former being acceptable and the latter constituting an unauthorized guilty plea if done without the client's consent. *See Underwood*, 939 F.2d at 474. Thus, for example, although the Seventh Circuit has concluded that a statement such as, "I think the evidence establishes the commission of that offense," *id.*, does not cross the line, the Sixth Circuit

has concluded that the statement, "They're going to the penitentiary. That part's easy because they're guilty," *Wiley*, 647 F.2d at 645, does.

¶ 30.   While the Sixth, Seventh and First Circuits are split as to where the line of acceptable trial strategy stands, we conclude that the comments by Gordon's defense counsel charged past the point of merely acknowledging the weight of the evidence against his client. Rather, Gordon's counsel passed judgment on the guilt of his client in arguing: "Obviously running around the neighborhood with two knives is disorderly conduct and it is disorderly conduct while armed." This statement is clearly the functional equivalent of a guilty plea, in that defense counsel conceded the basis for Gordon's conviction on that charge. *See Hawkins v. State*, 26 Wis. 2d 443, 448, 132 N.W.2d 545 (1965) ("[T]he plea itself provides the basis for conviction."); *see also* BLACK'S LAW DICTIONARY 1171 (7th ed. 1999) (A "guilty plea" is a "formal admission in court of having committed the charged offense."). Unlike *Underwood* and its progeny, we conclude that a defense attorney need not say the magic words "my client has decided to plead guilty," *Underwood*, 939 F.2d at 474, before a court may conclude that defense counsel unconstitutionally waived a defendant's right to plead not guilty. *See Brookhart*, 384 U.S. at 7.

¶ 31.   Additionally, unlike *Underwood* and its progeny, in the instant case, the trial court made a factual determination that defense counsel's statement "clearly suggested to the jury that the defendant was not contesting a conviction on Count 2 [disorderly conduct while armed]." We agree with the trial court that defense counsel's admission was the functional

727

equivalent of a guilty plea. Because such a plea may not be entered without a client's consent, a hearing is necessary to determine whether consent was given. *See State v. Curtis*, 218 Wis. 2d 550, 554–55, 582 N.W.2d 409 (Ct. App. 1998) (holding that a hearing is a prerequisite to a claim of ineffective assistance of counsel). Accordingly, we remand the matter to the trial court so that it may conduct a *Machner* evidentiary hearing.[8]

*C. A jury instruction lacking an essential element of the crime establishes prejudice under Strickland.*

¶ 32. Alternatively, Gordon contends that even if his defense counsel was not ineffective for admitting his guilt without his consent, his conviction for disorderly conduct while armed must be reversed due to an inadequate jury instruction. Specifically, Gordon argues that the jury instruction was defective and prejudicial because it failed to instruct the jury on the *Peete* nexus rule.

¶ 33. WISCONSIN STAT. § 939.63 provides that the penalty for a crime may be increased if the crime was committed while possessing, using, or threatening to use a dangerous weapon.[9] In *Peete*, the supreme court held that § 939.63 "requires a nexus between the predi-

---

[8] During a *Machner* hearing, trial counsel testifies about the reasons for the conduct that is attacked as deficient performance and, from that testimony, the reviewing court determines whether trial counsel's actions were the result of incompetence or deliberate trial strategy. *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

[9] WISCONSIN STAT. § 939.63 provides:

**939.63 Penalties; use of a dangerous weapon. (1)** (a) If a person commits a crime while possessing, using or threatening to

cate offense and weapon possession." *State v. Peete*, 185 Wis. 2d 4, 17, 517 N.W.2d 149 (1994). In explaining what constitutes an adequate nexus, the court stated that under § 939.63, "the state should be required to prove that the defendant possessed the weapon to facilitate commission of the predicate offense." *Id.* at 18.

¶ 34. A pattern jury instruction was prepared to encompass the holding in *Peete*. WISCONSIN JI—CRIMINAL 990 provides, in relevant part:

> The (information) (complaint) alleges not only that the defendant committed the crime of _____ but also that he did so while (using) (threatening to use) (possessing) a dangerous weapon.
>
> If you find the defendant guilty, you must answer the following question:
>
> "Did the defendant commit the crime of _____ while (using) (threatening to use) (possessing) a dangerous weapon?"
>
> Before you may answer this question "yes," you must be satisfied beyond a reasonable doubt that the defendant committed the crime while [(using) (threatening to use) a dangerous weapon.] [possessing a dangerous weapon *and possessed the dangerous weapon to facilitate the crime.*]

(Footnotes omitted.) (Emphasis added.)

¶ 35. In the instant case, the trial court failed to instruct the jury on the nexus requirement. Instead, it stated:

---

use a dangerous weapon, the maximum term of imprisonment prescribed by law for that crime may be increased as follows:

1. The maximum term of imprisonment for a misdemeanor may be increased by not more than 6 months.

Now count 2 alleges not only that the defendant committed the crime of disorderly conduct, but also that he did so while possessing, using or threatening to use a dangerous weapon. If you find the defendant guilty of the charge in count 2, you must answer the following question: Did the defendant commit the crime of disorderly conduct while possessing, using or threatening to use a dangerous weapon?

Before you may answer this question yes, you must be satisfied beyond a reasonable doubt that the defendant committed the crime of disorderly conduct while using, threatening to use or possessing a dangerous weapon.

¶ 36. Again, because defense counsel failed to object to this instruction at trial, Gordon must seek relief on the basis of ineffective assistance of counsel under *Strickland*, or in the interest of justice pursuant to WIS. STAT. § 752.35. After all, given Gordon's testimony, which appears to concede guilt to the charge of disorderly conduct while armed, reversal is certainly not required in the interest of justice. Therefore, we must determine whether defense counsel's failure to object to the jury instruction deprived Gordon of effective assistance of counsel.

¶ 37. As conceded by the State, "By the time of Gordon's trial in July and August of 2000, the 'nexus' requirement was well established." We agree and conclude that, based on *Peete* and WIS JI—CRIMINAL 990, defense counsel's failure to object to the jury instruction, which lacked the *Peete* nexus requirement, constitutes deficient performance. *See Strickland*, 466 U.S. at 690 (holding that trial counsel's performance is deficient if his or her acts or omissions are outside the wide range of professionally competent assistance).

■

¶ 38. The State argues, however, that Gordon "cannot show prejudice under *Strickland* for lack of a 'nexus' instruction." We disagree. The State's argument is refuted by this court's holding in *State v. Krueger*, 2001 WI App 14, 240 Wis. 2d 644, 623 N.W.2d 211. In *Kreuger*, we concluded "that a jury instruction lacking an essential element of the crime is fundamentally unfair and establishes prejudice under the *Strickland* test."[10] *Id.* at ¶ 15. Thus, because the nexus requirement is an essential element of a charge under WIS. STAT. § 939.63, prejudice is established. *See Peete*, 185 Wis. 2d at 19 ("The nexus required by the 'while possessing' language of sec. 939.63 is an element of sec. 939.63."); *see also State v. Villarreal*, 153 Wis. 2d 323, 328–29, 450 N.W.2d 519 (Ct. App. 1989) (concluding that the charge of use of a dangerous weapon under § 939.63 is an element of the crime charged). Therefore, Gordon's defense counsel was ineffective and Gordon is entitled to a new trial on the "while armed" portion of the disorderly conduct charge.

¶ 39. Accordingly, we reverse the "while armed" portion of the disorderly conduct charge. Because the jury separately found Gordon guilty of disorderly con-

---

[10] Although the dissent "do[es] not read *Krueger* as establishing a *per se* rule," in *Krueger*, we concluded that "if the circuit court fails to instruct a jury about an essential element of the crime and the jury must find that element beyond a reasonable doubt, there is an *automatic* reversal of the verdict." *State v. Krueger*, 2001 WI App 14, ¶ 12, 240 Wis. 2d 644, 623 N.W.2d 211 (emphasis added) (citing *State v. Avila*, 192 Wis. 2d 870, 893a, 532 N.W.2d 423 (1995)).

duct, that portion of the verdict still stands.[11] *See Peete*, 185 Wis. 2d at 23. We remand the cause to the circuit court with directions to enter a judgment of conviction against Gordon on the disorderly conduct charge without the "while armed" penalty enhancer.[12] *See id.* This court also remands the matter to direct the circuit court to determine whether the State wishes a new trial solely on the issue of whether Gordon is guilty of the conduct prohibited by WIS. STAT. § 939.63. *Id.* Additionally, we direct the circuit court to vacate Gordon's sentence on the disorderly conduct while armed conviction and re-sentence him after the new trial; or, if the State elects not to conduct a new trial, to sentence him solely on the disorderly conduct conviction without the penalty enhancer.[13] *Id.*

[11] The special verdict form asked separately whether Gordon was guilty of disorderly conduct and, if so, whether he committed the crime while armed.

[12] However, after conducting a *Machner* hearing as required by part B. of our decision, if the trial court concludes that defense counsel was ineffective for offering the equivalent of a guilty plea without Gordon's consent, then the disorderly conduct conviction will also be vacated and the State would have to retry the entire charge of disorderly conduct while armed.

[13] Because the trial court did not apportion the sentence for his disorderly conduct while armed conviction between the predicate offense and the WIS. STAT. § 939.63 enhancer, the circuit court's sentence on the disorderly conduct conviction cannot stand. *See State v. Peete*, 185 Wis. 2d 4, 23–24, 24 n.11, 517 N.W.2d 149 (1994). Therefore, the circuit court may not impose a sentence for the predicate offense until either a jury has made a finding as to Gordon's guilt under § 939.63, or the State elects to dismiss the "while armed" enhancer. *Id.* at 24 n.11.

## D. *Gordon is entitled to a new trial on violating the domestic abuse injunction.*

¶ 40.    Gordon was charged with knowingly violating a domestic abuse injunction contrary to WIS. STAT. § 813.12. One element of violating a domestic injunction requires the State to prove that "the defendant knew that the injunction had been issued and knew that his acts violated its terms." WIS JI—CRIMINAL 2040. While the State attempted to prove this element by establishing that Gordon was properly served with a copy of the injunction, Gordon denied knowledge of service.

¶ 41.    Under the public records hearsay exception, *see* WIS. STAT. § 908.03(8), the trial court admitted the injunction, the temporary restraining order, and proof of service for each, without testimony from the alleged servers or a records custodian. The trial court went even further in instructing the jury, stating:    "You should . . . accept as conclusively proven that that order was served on the defendant in person on November 2nd, 1998 by a Milwaukee County Deputy Sheriff." The court also referred to the temporary restraining order, stating:    "This document was served in person by a Milwaukee County Deputy Sheriff on Mr. Gordon on October 23, 1998. And you should accept that fact as conclusively proven as well."

¶ 42.    Gordon alleges two separate errors:    (1) the trial court erroneously admitted the evidence under WIS. STAT. § 908.03(8), and (2) the trial court improperly directed a partial verdict in favor of the State by instructing the jury to accept the fact of service as conclusively proven. We agree.

¶ 43. First, the court mischaracterized these documents as "affidavits:"

> In other words . . . Mr. Gordon's rights to confront the deputies who have *sworn under oath* that they served him is diminished. . . . Because I'm satisfied that these *affidavits* bear a very high indicia of reliability[,] I believe that that resolves the confrontation clause concerns that I have.

However, these documents were not made under oath or attested to in any way; thus, they were not affidavits. *See* BLACK'S LAW DICTIONARY 58 (7th ed. 1999) (An "affidavit" is a "voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths."). Further, because the State did not enter these documents into evidence through a witness, such as the officer who allegedly served the defendant or the records custodian from the Milwaukee County Sheriff's Department, these documents were never properly authenticated. *See State v. Garner,* 54 Wis. 2d 100, 107, 194 N.W.2d 649 (1972) (stating that under the public records exception to the hearsay rule, custodianship is important, and a competent witness must provide the required identification of official records). Given the absence of proper authentication combined with the trial court's mistaken belief that these documents were affidavits, we conclude that the trial court erroneously exercised its discretion in admitting theses documents into evidence pursuant to WIS. STAT. § 908.03(8). *See Daniel-Nordin v. Nordin,* 173 Wis. 2d 635, 654, 495 N.W.2d 318 (1993) ("A circuit court erroneously exercises its discretion when it makes a mistake with respect to the facts upon which its decision is based.").

¶ 44. Additionally, it is well-settled that "[t]he Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." *United States v. Gaudin*, 515 U.S. 506, 522–23 (1995); *see also State v. Perkins*, 2001 WI 46, ¶ 52, 243 Wis. 2d 141, 626 N.W.2d 762 (Wilcox, J., concurring) (stating that the same is true under the Wisconsin Constitution). "The right includes, of course, as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of 'guilty.'" *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993).

¶ 45. "Thus, although a judge may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he [or she] may not direct a verdict for the State, no matter how overwhelming the evidence." *Id.* Therefore, because even partially directing a verdict against a defendant is reversible error *per se, see, e.g., Villarreal*, 153 Wis. 2d at 332–33, by directing the jury to accept as conclusively proven that Gordon was served with the order, the trial court erroneously removed a factual issue from the jury's consideration. For the foregoing reasons, we reverse the judgment convicting Gordon of knowingly violating a domestic abuse injunction and remand the matter to the trial court for a new trial on this charge.

*E. The trial court erred in assessing costs against Gordon.*

¶ 46. At sentencing, the State requested that Gordon be assessed $342, the costs attributable to transporting Officer Amberg, one of the State's witnesses

who was one of the officers on the scene at the incident, back from vacation to testify, and then back to his vacation after his testimony. Defense counsel objected stating: "I don't think police officer time or overtime or travel costs are compens[a]ble." The trial court awarded the costs, stating:

> I think in order to have a necessary witness here on a last day of a period of which Mr. Gordon has requested a speedy trial are appropriate costs for the state to impose on the defendant.

> All of these costs and surcharges must be paid in full on or before December 1st, 2002.

¶ 47. Gordon argues that the trial court erred in awarding these costs because: (1) it is improper to penalize an accused for asserting his constitutionally guaranteed right to a speedy trial; and (2) the trial court erroneously exercised its discretion in awarding these costs based on its mistaken belief that Gordon was responsible for the adjournment that resulted in the trial conflicting with the officer's vacation schedule.

¶ 48. Because Gordon failed to object on the grounds that the costs were designed to penalize the exercise of his speedy trial rights, he waived any speedy trial based objection. *See State v. Peters*, 166 Wis. 2d 168, 174, 479 N.W.2d 198 (Ct. App. 1991) ("To be sufficiently specific, an objection must reasonably advise the court of the basis for the objection."). Additionally, Gordon did not dispute that the trial court had the authority to assess these costs pursuant to WIS. STAT. § 973.06. Therefore, we must only determine whether the trial court erroneously exercised its discretion in assessing these costs based on its conclusion that Gordon was responsible for the scheduling conflict. *See*

*State v. Gerard*, 57 Wis. 2d 611, 626–27, 205 N.W.2d 374 (1973) (concluding that the decision whether to assess costs as part of a defendant's sentence is addressed to the trial court discretion).

¶ 49. Generally, costs are penal in nature. *See State ex rel. Korne v. Wolke*, 79 Wis. 2d 22, 26, 255 N.W.2d 446 (1977). The trial court implicitly blamed the timing of Gordon's speedy trial demand for the fact that the trial was scheduled during Officer Amberg's vacation. However, as conceded by the State, "[a]lthough the new trial date happened to require. returning Officer Amberg from vacation, this happenstance was attributable to *various* circumstances for which responsibility among the court and parties was mutual." Why then should Gordon bear the burden of this mutual responsibility?

¶ 50. Moreover, the record indicates that the scheduling conflict was actually primarily attributable to the State. Gordon made his speedy trial demand on May 1, 2000, and trial was set for July 19, 2000. On July 19, 2000, the State informed the court:

> I'm not prepared to proceed because of problems with one of our witnesses who is handicapped and confined to a wheelchair. . . . She indicated that she has no way of getting down here because of her handicap condition and we are unable to secure the specialized transportation she needs to be in court until tomorrow at 8:30 and under those circumstances I guess we're not prepared to proceed right at this moment.
>
> . . . .
>
> The defendant has a speedy trial demand filed May 1st and I calculate that would expire on the weekend of the 29th and 30th of July. The first operative available day of regular court business would be July 31st.

737

Over Gordon's objection, the trial court scheduled a new trial for July 31, 2000.

¶ 51.   Although this new trial date conflicted with Officer Amberg's vacation schedule, we are not persuaded that this conflict was attributable to Gordon. Accordingly, we vacate the portion of the judgment of conviction assessing these costs against the defendant.

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded with directions.

¶ 52. FINE, J. (*dissenting*). I join in all of the Majority's opinion except Part II.C., where the Majority holds that the failure to instruct the jury that the crime of disorderly conduct while armed requires a nexus between the "disorderly conduct" and the "while armed" is *ipso facto* prejudicial. I disagree.

¶ 53.   The Majority relies on *State v. Krueger*, 2001 WI App 14, 240 Wis. 2d 644, 623 N.W.2d 211, for imposition of an *ipso-facto*-prejudicial *per se* rule. But in *Krueger*, the trial court did not instruct the jury that the defendant could not be found guilty of attempting to have sexual contact with a person under the age of thirteen years unless the purpose of the touching was for sexual arousal or gratification, or for degrading or sexually humiliating the victim. *Id.*, 2001 WI App 14 at ¶ 2. Although *Krueger* does not tell us what the facts were in that case, here there can be no doubt but that there *was* the requisite nexus between the knives and Gordon's conduct. Thus, Gordon has not satisfied his burden to show that his lawyer's failure to request a nexus instruction was prejudicial.

738

¶ 54.   I do not read *Krueger* as establishing a *per se* rule. Accordingly, I respectfully dissent from Part II.C. of the Majority's opinion.