
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35241-2-III |
| Respondent, | ) | (Consolidated with |
| | ) | No. 35746-5-III) |
| v. | ) | |
| | ) | |
| ERICKA LYNN MCCANDLESS | ) | UNPUBLISHED OPINION |
| also known as ERICKA LYNN HELLER, | ) | |
| | ) | |
| Appellant. | ) | |
| _____ | ) | |
| | ) | |
| In the Matter of the Personal Restraint of | ) | |
| | ) | |
| ERICKA LYNN MCCANDLESS | ) | |
| also known as ERICKA LYNN HELLER, | ) | |
| | ) | |
| Petitioner. | ) | |

KORSMO, J. — Ericka Heller, a.k.a. Ericka McCandless, appeals from Spokane

County convictions for attempting to elude, failure to remain at the scene of an accident,

and obstructing a public servant, raising several contentions. We affirm.

FACTS

Ms. Heller was accused of leading Spokane Valley officers on a high speed chase

during the evening of November 2, 2016. The pursuit began when Deputy Sheriff Sky

Ortiz saw a pickup, containing two or three people, fail to stop for a stop sign. Deputy

Ortiz followed the truck in his marked police vehicle. The truck accelerated to approximately 60 mph in a 35 mph zone.

Deputy Ortiz turned on his lights and siren, and a pursuit ensued. Multiple officers, including both a helicopter pilot and a canine handler, joined in the ten minute chase throughout the Spokane Valley area. The truck reached a speed of 80 mph. The driver lost control attempting to make a turn and slid into a curb, briefly coming to a stop. Deputy Spencer Rassier attempted to pin the truck to the curb with his patrol car, but the effort failed since he was the only police vehicle to catch up to the truck while it was stopped.[1] The truck sped away from the curb and struck the deputy's vehicle as it left.

The pursuit came to a halt at the intersection of Sprague Avenue and Pines Road, where the driver lost control of the truck and crashed. Two individuals fled from the scene on foot: a female who exited the truck after it had stopped, and a male who was seen running while the truck was still spinning in the intersection. The female, identified as Ms. Heller, was captured after a foot pursuit when she tried to enter another car. Police canine Laslo chased and apprehended the male, later identified as Justin Alderson. A second female, Amanda Milhous, did not flee the truck and surrendered to law enforcement at the scene.

---

[1] Deputy Rassier testified that he attempted a "post-PIT maneuver." PIT (police intervention technique) involves striking the rear wheel of a vehicle with the front of a police car, sending the fleeing vehicle into a spin and forcing it to stop. The post-PIT maneuver involves using patrol cars to block the stalled vehicle.

Alderson insisted that he had not been in the truck.[2] He told officers that he had been at the nearby Walgreen's store to purchase Camel cigarettes. An officer confirmed with a store cashier that she had just sold Turkish Royal cigarettes to Alderson shortly before the truck crashed. Corporal Jeffrey Thurman testified that Ms. Heller fled from the driver's side of the truck.

Ms. Heller was charged with possession of a stolen vehicle, attempting to elude, failure to remain at the scene of an accident (attended vehicle), and obstructing a public servant. The matter ultimately proceeded to jury trial. The prosecutor told jurors that the obstructing charge related to Ms. Heller's flight on foot from the truck, while the other charges arose from her driving exploits.

The jury acquitted on the possession of a stolen vehicle charge, but convicted on the other three offenses. The jury also found that Ms. Heller's driving had endangered others. The trial court found Ms. Heller's offender score to be "9+" and sentenced her to a top end sentence of 41 months and one day on the eluding charge. The court imposed 364 day sentences on the two gross misdemeanor offenses and directed that they be served concurrently with each other, but consecutively to the eluding conviction. The court orally directed that the credit for time served, 168 days as of sentencing, be applied

---

[2] He told officers that he was high on various substances and angry that the truck came near him, so he confronted the vehicle and threw a plastic bottle of beer at the driver. None of that evidence was admitted at trial.

to the gross misdemeanor offenses. However, the written judgment did not apportion the time served to either set of offenses and only recognized 163 days of credit for time served. A subsequent order clarified that the 364 day sentences were to be served in the county jail, while the eluding sentence would be served in prison.

Ms. Heller then timely appealed to this court. She also filed a personal restraint petition (PRP) that was consolidated with the appeal. A panel heard oral argument of her appeal.

ANALYSIS

Ms. Heller raises six total arguments, which we address in the following order. First we consider her contention that there was insufficient evidence of her identity as the driver to support the jury's verdicts on the eluding and failure to remain convictions. We then turn to her contention that evidence was admitted in violation of the hearsay rule and/or her right to confront witnesses. She next contends that the failure to remain statute was misapplied to this case. She also contends that the eluding and obstructing charges should have merged and that her credit for time served was miscalculated. In the PRP, she argues that she was not properly credited with "good time" earned in jail.

*Sufficiency of the Evidence*

Corporal Thurman identified Ms. Heller as the person who exited the driver's door of the truck. That evidence was sufficient to support the jury's conclusion.

4

Well settled standards govern review of this contention. Evidence is sufficient to support a verdict if the jury has a factual basis for finding each element of the offense proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980). The evidence is viewed in the light most favorable to the prosecution. *Green*, 94 Wn.2d at 221. Appellate courts defer to the trier-of-fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Here, Ms. Heller points to conflicting evidence concerning whether she or another person was the driver. However, the conflict in the evidence is irrelevant to this court. *Id*. Corporal Thurman expressly identified Ms. Heller as the person who exited the truck from the driver's door once the vehicle stopped. Report of Proceedings (RP) at 167. In light of the testimony that Mr. Alderson was fleeing from the area before the truck even stopped, the jury was free to credit the view that he was not in the truck during the eluding.

This evidence permitted the jury to conclude that Ms. Heller was the driver alleged to have committed the two driving offenses. The verdicts were supported by sufficient evidence.

5

*Evidentiary and Confrontation*

Ms. Heller next argues that two pieces of Corporal Thurman's testimony violated the rules of evidence and the constitution. She is incorrect.

The basic rules governing review of evidentiary rulings also are well settled. This court reviews the trial court's evidentiary rulings for abuse of discretion. *State v. Guloy*, 104 Wn.2d 412, 429-430, 705 P.2d 1182 (1985). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). A proper objection must be made at trial to perceived errors in admitting or excluding evidence; the failure to do so precludes raising the issue on appeal. *Guloy*, 104 Wn.2d at 421. "'[A] litigant cannot remain silent as to claimed error during trial and later, for the first time, urge objections thereto on appeal.'" *Id.* (quoting *Bellevue Sch. Dist. 405 v. Lee*, 70 Wn.2d 947, 950, 425 P.2d 902 (1967)). The party must have challenged the admission of evidence at trial on the same grounds that it raises on appeal. *Guloy*, 104 Wn.2d at 422. As explained there:

> As to statement (d), counsel objected but on the basis that it was not proper impeachment nor was it within the scope of redirect. A party may only assign error in the appellate court on the specific ground of the evidentiary objection made at trial. Since the specific objection made at trial is not the basis the defendants are arguing before this court, they have lost their opportunity for review.

(Citation omitted.)

Witnesses are not permitted to opine on the credibility of others. *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987). However, unless the purported credibility testimony was challenged at trial, it does not amount to error unless it is "a nearly explicit statement by the witness that the witness believed the accusing victim." *State v. Kirkman*, 159 Wn.2d 918, 936, 155 P.3d 125 (2007).

Issues that present a manifest question of constitutional law may be considered for the first time on appeal, if the record is adequate to address the issue. *State v. McFarland*, 127 Wn.2d 322, 333-334, 899 P.2d 1251 (1995). The Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against her. U.S. CONST. amend. VI; *Crawford v. Washington*, 541 U.S. 36, 42, 51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). This right, which applies to the states via the Fourteenth Amendment's due process clause, necessarily speaks to a defendant's right to cross-examine adverse witnesses. *Pointer v. Texas*, 380 U.S. 400, 404-405, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). The right of confrontation is the guarantee of an opportunity to cross-examine the witness. *United States v. Owens*, 484 U.S. 554, 559, 108 S. Ct. 838, 98 L. Ed. 2d 951 (1988).

While the Sixth Amendment is clearly a constitutional right, the question of whether the confrontation clause itself presents an issue of "manifest error" typically is not one that can be decided in the first instance on appeal. The reason for that is that the confrontation right must be asserted at trial lest it be waived. *Melendez-Diaz v.*

*Massachusetts*, 557 U.S. 305, 327, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009); *State v.

O'Cain*, 169 Wn. App. 228, 247-248, 279 P.3d 926 (2012); *State v. Schroeder*, 164 Wn.

App. 164, 168, 262 P.3d 1237 (2011).[3]

With this background in mind, we turn to Ms. Heller's argument. She contends

that Corporal Thurman violated the hearsay rules and her confrontation rights (1) when

he stated that he stopped trying to confirm Mr. Alderson's alibi after visiting the

Walgreen's store, and (2) provided opinion testimony that he believed Alderson's story

that he had been inside the store during the pursuit.

The first comment did not constitute hearsay and was not opinion testimony. It

was a statement of fact—the officer did not go to any other stores to investigate

Alderson's story. That testimony did not relate the statement of another person and did

not opine on the credibility of Alderson's story. Understandably, the testimony did not

draw any objection. There was no error of any kind.

The next statement, which was challenged by the defense, did constitute improper

opinion testimony. However, the court sustained the defense objection and instructed the

jury to disregard the question. RP at 179-180.[4] Ms. Heller does not persuasively argue

---

[3] This rule has long been followed by both the United States and Washington
Supreme Courts. *See, e.g.*, *State v. Nelson*, 103 Wn.2d 760, 763, 697 P.2d 579 (1985)
(citing cases in context of sentence revocation proceeding).

[4] The prosecutor then rephrased his question and obtained an answer that did not
draw any objection—the officer was satisfied that he had gone to enough places to
confirm where Alderson had been at the time of the eluding. RP at 180.

that the court's corrective action failed to resolve the problem. The court did not abuse its discretion in its handling of this objection.

The challenged testimony does not establish any prejudicial error.[5]

*Application of Failure to Remain Statute*

Ms. Heller next argues that the hit and run statute was improperly applied to the "accident" that occurred during the course of the pursuit and that she should not have been charged with that offense because she did not cause the accident. This position has been previously rejected.

A driver involved in an accident has numerous duties, including the duty to stop and identify herself to the other driver and, if necessary, arrange for medical assistance. RCW 46.52.020(2), (3). Ms. Heller argues that this statute cannot reasonably be applied to a driver who is attempting to evade the police. However, that unsupported contention does not aid her. A driver being pursued by police who collides with another driver, whether it be an officer or an unlucky civilian who crossed paths with the pursuit, is not immunized by the failure to remain statute merely because she is already disobeying another traffic law. If anything, the ensuing collision creates a second reason why the flight should end.

---

[5] Since both Corporal Thurman and the store clerk testified at trial, we do not perceive any violation of the right to confrontation. Both witnesses were cross-examined by the defense. Alderson did not testify, but none of his statements were offered at trial.

More significantly, Ms. Heller argues that she was not the cause of the accident and, therefore, had no duty to remain at the scene. Although her argument is dubious on these facts, it also is without legal support.[6] The case she analogizes to is not apropos.

Ms. Heller cites *City of Spokane v. Carlson*, 96 Wn. App. 279, 979 P.2d 880 (1999). There, Mr. Carlson, a driver who caused an accident on a bridge, motioned to the other driver and drove on looking for a safe place to pull over; the other driver lost contact with him and reported the accident to the police. *Id*. at 282. Carlson was cited for hit and run under the city municipal code and convicted of that offense. *Id*. at 282-283. On appeal, he tried to excuse his failure to remain at the scene by pointing out that the victim did not remain, either, and arguing that it was inappropriate to place the burden of exchanging information on him in those circumstances. *Id*. at 285. This court disagreed, concluding that the statute could properly place the burden on Mr. Carlson, as the driver who caused the accident, to exchange information with the other driver. *Id*. at 285-287.

*Carlson* simply stands for the proposition that a driver who causes an accident must stay at the scene in order to fulfill his obligation to the other driver. It cannot stand

---

[6] The testimony shows that Ms. Heller lost control and hit the curb on her own accord and that the deputy did not use a PIT maneuver. Instead, the deputy attempted a "post-PIT" maneuver to pin her in, although that effort failed and the vehicles collided while Ms. Heller drove away. The question of which driver initiated contact is not resolved by the record, nor is there any evidence that the collision was the result of an intentional decision by one driver to strike the other.

for the converse proposition, advanced by Ms. Heller, that one driver is permitted to leave the scene without satisfying her statutory obligations simply because she believed the other driver caused the accident.

Instead, our case law is clear that *all* drivers involved in an accident, including those whose vehicles do not actually strike, are obligated under the statute. In *State v. Perebeynos*, the defendant "initiated a lane change, although he never left his lane, his movement appeared to trigger" another driver's reaction to swerve to the right very rapidly and hit a semi-truck in the far right lane. *State v. Perebeynos*, 121 Wn. App. 189, 193, 87 P.3d 1216 (2004) (emphasis omitted). Mr. Perebeynos aborted the lane change, moving back to the center of his lane in less than half a second. *Id.* After hitting the truck, the victim's car crossed in front of Perebeynos' car, traversed the four lanes of traffic, and stopped in a construction zone near southbound traffic. *Id.* Division One of this court held that Mr. Perebeynos "was, at the very least, a participant in the events leading up to the accident." *Id.* The court then reasoned:

> There is no requirement under the hit-and-run statute or in Washington cases interpreting it that suggests a person must proximately cause a collision or engage in illegal behavior to be "involved in an accident." First, causation is not an element of felony hit and run. The statute merely requires that a defendant be "involved," which "is an imprecise term incorporating such concepts as being part of, contributing to and being a participant."

*Id*. at 194 (footnote omitted); *accord State v. Bourne*, 90 Wn. App. 963, 970, 954 P.2d 366 (1998) (failure to remain does not require that the defendant cause the injury); *State*

11

*v. Hughes*, 80 Wn. App. 196, 202, 907 P.2d 336 (1995) (by racing with the car that crashed, defendant was "involved in an accident" for purposes of failure to remain statute).

The duty imposed by the statute, and recognized by the noted cases, is for *all* drivers to exchange information and render aid. The duties imposed by the statute are not predicated on some theory of causation.

Ms. Heller also posits that she was not involved in an "accident" since she was intentionally struck by the officer. As noted previously, there is no factual basis for that assertion. Nonetheless, even an intentional "accident" triggers the duties imposed by the statute. On point is the decision in *State v. Silva*, 106 Wn. App. 586, 24 P.3d 477 (2001).

There a driver attempted to leave the scene of a traffic stop and an officer reached into the car in order to turn off the engine. *Id.* at 589. The officer eventually fell away from the moving car and was injured; the driver was convicted, among other things, of failure to remain at the scene of an accident. *Id.* at 588-589. He argued that because there was nothing accidental about the incident—he intentionally drove away and the officer intentionally acted to prevent the escape—that there was no "accident" within the meaning of the hit and run statute. *Id.* at 590. Division One of this court disagreed. After canvassing rules of statutory construction, policy arguments, and cases from other states construing similar statutes, the court held:

> the word "accident," within the meaning of our hit-and-run statute, includes incidents arising from intentional conduct on the part of the driver and/or the victim.

*Id.* at 595.  We agree.

Thus, even if the evidence had established that the two vehicles intentionally struck each other, the duties of the two drivers to exchange information and provide aid still existed.  Ms. Heller was not free to ignore the statutory dictates merely because she believed the deputy purposely struck her car.

The crime of failure to remain at the scene of an accident did apply to the facts of this incident.

*Merger*

Ms. Heller next argues that the eluding and obstructing charges should merge because they could have been committed by the same conduct.  Even assuming that her contention could be true, the evidence again does not support her argument.

The prosecutor expressly elected in closing argument the evidence upon which the jury should rely to find that the two crimes had been committed.  He relied on the extensive driving to prove the eluding charge, and asked the jury to rely on Ms. Heller's post-driving flight on foot to prove the obstructing charge.  RP at 295-297, 299.

Appellate courts review claims of double jeopardy de novo.  *State v. Jackman*, 156 Wn.2d 736, 746, 132 P.3d 136 (2006).  Double jeopardy can arise in three different circumstances.  *State v. Gocken*, 127 Wn.2d 95, 100, 896 P.2d 1267 (1995).  As relevant

13

here, double jeopardy prohibits multiple criminal convictions for one crime, absent

evidence that the legislature intended multiple convictions. *Id.* at 100-101; *In re Pers.*

*Restraint of Orange*, 152 Wn.2d 795, 815, 100 P.3d 291 (2004); *State v. Calle*, 125

Wn.2d 769, 776, 888 P.2d 155 (1995). When multiple convictions have been entered

where only one is permitted, the remedy is to vacate the lesser offense. *State v. Weber*,

159 Wn.2d 252, 265, 149 P.3d 646 (2006). The lesser offense is the lesser included

offense or the one that carries the lesser punishment. *Id.* at 269.

Merger also has a separate legislative component—did the legislature intend that

the same conduct constitute two separate crimes? Merger is "a doctrine of statutory

interpretation used to determine whether the Legislature intended to impose multiple

punishments for a single act which violates several statutory provisions." *State v.*

*Vladovic*, 99 Wn.2d 413, 419 n.2, 662 P.2d 853 (1983). The merger doctrine has

developed over time as an extension of double jeopardy principles. *State v. Berg*, 181

Wn.2d 857, 864, 337 P.3d 310 (2014). Double jeopardy analysis depends on the express

statutory language and legislative intent to permit or disallow multiple punishments.

Merger is established if a defendant is convicted of offenses that are the same in

law and in fact. *Calle*, 125 Wn.2d at 777. Merger is not established if each offense, as

charged, includes elements not included in the other. If so, the offenses are different and

multiple convictions can stand. *Id*. Washington also recognizes an exception to the

doctrine: "if the offenses committed in a particular case have independent purposes or effects, they may be punished separately." *Vladovic*, 99 Wn.2d at 421.

The crime of attempting to elude requires proof, inter alia, that a driver willfully refused to stop after being given a signal by a uniformed officer and thereafter drives in a reckless manner. RCW 46.61.024. In contrast, one obstructs a public servant when she willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." RCW 9A.76.020. Although the two offenses share the same mental state of willfulness, the two statutes do not otherwise have elements in common. The eluding statute also has a number of technical elements describing the officer, his equipment, and the nature of the signal given to the driver. The obstructing statute requires proof of the willful intent to hinder police.

The two offenses are not the same law. It would be possible for the two offenses to be proved by the same conduct, however. One could drive away from an officer and both elude and hinder the officer. The two offenses have different purposes, however, and would fall within the *Vladovic* exception—the purpose of obstructing is to hinder an officer, while the purpose of eluding is to evade an officer by driving in a particular manner that is dangerous to others. It is not enough that both offenses may have the same generalized effect of hindering law enforcement. They have slightly different purposes.

More importantly here, however, is the fact that the two crimes did not arise from the same conduct. The prosecutor expressly elected the post-driving flight on foot as the

15

basis for the obstructing charge. RP at 299. The jury was not asked to consider the driving conduct as a basis for finding the obstructing charge, and the driving was the only possible basis for the eluding charge. Under the facts of this case, the two events were not based on the same facts.

Merger is not required because the two crimes were not the same in law and in fact. The trial court correctly considered them to be separate offenses.

*Credit for Time Served*

Ms. Heller next argues that the trial court erred by only crediting her with 163 days of credit and in not allocating that credit to her local sentence. She has failed to establish error.

The court was required to give Ms. Heller credit for time spent in custody solely on these offenses. RCW 9.94A.505(6). This statute reflects a codification of the defendant's constitutional rights. *In re Pers. Restraint of Costello*, 131 Wn. App. 828, 832, 129 P.3d 827 (2006). We review calculation of credit for time served de novo because the issue presents a question of law. *State v Swiger*, 159 Wn.2d 224, 227, 149 P.3d 372 (2006).

Here, there were 163 days from the defendant's arrest on November 2, 2016, until her sentencing on April 14, 2017. Although the trial court misspoke and stated that there were 168 days, the judgment and sentence reflects the actual 163 day period. There was no error.

16

Ms. Heller also argues that the court was required to apply the credit to her local sentence rather than the state prison sentence, but she provides no authority in support of that argument. Although it would be in the county's financial interest if the time served to date was credited against her local sentence instead of her state sentence, the judgment and sentence is silent on the topic. Ms. Heller's only right is to be credited with the time served. RCW 9.94A.505(6). The judgment and sentence does that. She has no right to have that time applied against one particular portion of the sentence or another.

There was no error.

*Personal Restraint Petition*

The PRP contends that Ms. Heller earned "good time" in the county jail that was not credited to her sentence.[7] She fails to meet the burdens placed on her petition.

The burdens placed on a petitioner are significant. Relief will only be granted in a PRP if there is constitutional error that caused substantial actual prejudice or if a nonconstitutional error resulted in a fundamental defect constituting a complete miscarriage of justice. *In re Pers. Restraint of Woods*, 154 Wn.2d 400, 409, 114 P.3d 607 (2005). It is the petitioner's burden to establish this "threshold requirement." *Id.* To do so, a PRP must present competent evidence in support of its claims. *In re Pers.*

---

[7] The PRP also raises the same argument that her credit for time served needed to be applied against her local, rather than state, sentence. Since that issue is considered in the appeal, we will not consider it again in this PRP. RAP 16.4 (d).

*Restraint of Rice*, 118 Wn.2d 876, 885-886, 828 P.2d 1086 (1992). If the facts alleged would potentially entitle the petitioner to relief, a reference hearing may be ordered to resolve the factual allegations. *Id.* at 886-887.

Here, Ms. Heller has not established her argument. She has provided no evidence establishing what credit for time served the jail may have conveyed to the Department of Corrections, let alone whether the jail certified any earned early release time ("good time") that she may have accrued. RCW 9.94A.729(1)(a). In the absence of proof concerning what the jail actually did, she cannot establish that the jail erred in any manner.

Accordingly, the PRP is dismissed for failure to establish that any error occurred. Convictions affirmed; petition dismissed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

I CONCUR:

Siddoway, J.

18

No. 35241-2-III consolidated with 35746-5-III

FEARING, J. (concurring) — During a high speed chase with law enforcement officers, the driver of a pickup truck lost control of his or her truck when attempting to make a turn. The truck slid into a curb and briefly stopped. One sheriff deputy unsuccessfully attempted, with his patrol car, to pin the pickup truck to the curb. The driver of the pickup accelerated the truck and sped from the curb. The trial testimony lacks clarity as to whether the truck struck the deputy's vehicle or vice versa. The physicality of the collision suggests that the deputy's car struck the pickup because of the direction of the vehicles at the time of the collision and the location of the damage on the deputy's patrol car. Eventually, the pursuit continued and the pickup stopped when again striking a curb. The driver exited the car and fled from police.

The State of Washington contends that Ericka Heller a/k/a Ericka Lynn McCandless drove the eluding pickup truck. Ericka Heller contends that Justin Alderson drove the pickup. The State argues that Alderson was an innocent bystander.

The State of Washington charged Ericka Heller McCandless with possession of a stolen vehicle, attempting to elude, failure to remain at the scene of an accident, and obstructing a public servant. The prosecutor told jurors that the obstructing charge

related to Heller's flight on foot from the pickup truck after her pickup truck came to a later stop, while all other charges arose from her driving exploits. During trial, Heller never argued that the failure to remain statute, RCW 46.52.020, did not apply. Instead, Heller conceded that the driver of the pickup committed the crime. She denied that she drove the truck. The jury acquitted on the possession of a stolen vehicle charge, but convicted on the other three offenses.

Ericka Heller contends that the eluding and obstructing charges should merge. In response, I would not address whether the two crimes constitute the same crime in law. I would rest the affirmation of the conviction based on the State's limiting the obstruction charge to Heller's flight on foot after her pickup truck permanently stopped. The State thereby rested the two charges on distinct facts. I would reserve the question of whether the two crimes can constitute the same in law for another case.

I would also limit our ruling in affirmation of the failure to remain charge on Ericka Heller's failure to argue at trial that RCW 46.52.020 did not apply in these circumstances. Heller limited her defense to the charge to a claim that Justin Alderson, not she, operated the pickup truck. Under the doctrine of waiver, issues not raised in the trial court may not be raised for the first time on appeal. RAP 2.5(a); *State v. Nitsch*, 100 Wn. App. 512, 519, 997 P.2d 1000 (2000). The defendant may raise a new issue on

2

appeal if the issue concerns a manifest constitutional error. RAP 2.5(a). Heller does not assert a manifest constitutional error.

When Ericka Heller conceded to the jury during closing that the driver of the pickup truck committed the crime of failure to remain, Heller likely even invited any error. Under the doctrine of invited error, a party may not materially contribute to an erroneous application of law at trial and then complain of it on appeal. *In re Dependency of K.R.*, 128 Wn.2d 129, 147, 904 P.2d 1132 (1995). Unlike waiver, the defendant may not even rely on a manifest constitutional error on appeal if she invited the error. The invited error doctrine precludes a criminal defendant from seeking appellate review of an error she helped create, even when the alleged error involves constitutional rights. *State v. Studd*, 137 Wn.2d 533, 546-47, 973 P.2d 1049 (1999); *State v. Henderson*, 114 Wn.2d 867, 870-71, 792 P.2d 514 (1990).

In *State v. Silva*, 106 Wn. App. 586, 24 P.3d 477 (2001), another division of this court held that the failure to remain statute applies even if the defendant's intentional conduct caused the "accident." Because of waiver, if not invited error, this court need not decide whether the statute applies to the intentional striking of a patrol car during eluding a law enforcement pursuit. Otherwise, I would question the wisdom of the ruling. *Silva* stretches the meaning of the word "accident." The legislature likely never intended the statute to apply under such circumstances. The charge of malicious mischief, under

3

No. 35241-2-III cons. w/35746-5-III (concurrence)
*State v. Heller aka McCandless; PRP of Heller aka McCandless*

RCW 9A.48.070, for damage to public property fits the misconduct closer.

If Ericka Heller committed the crime of failure to remain, one could readily argue that the sheriff deputy also committed the crime because he failed to stop to exchange information. RCW 46.52.020 admits no exception for an officer engaged in law enforcement activity. Another would readily respond to this argument by characterizing the contention as ridiculous, if not absurd, to propose that a law enforcement officer stop his vehicle at the scene of a collision when his or her patrol car collides with a vehicle he or she pursues. But such a response illustrates the silliness of applying the crime to anyone in this setting.

I CONCUR:

_____
Fearing, J.

4